CITY OF EUCLID, APPELLANT, *v.* MACGILLIS, APPELLEE.*

(No. 25780—Decided January 11, 1962.)

*Motion to certify the record overruled (37733), April 17, 1963.

*Mr. John F. Ray, Jr.,* director of law, and *Mr. Robert L. Steele,* for appellant.

*Messrs. Brouse, McDowell, May, Bierce & Wortman,* for appellee.

Kovachy, P. J. This is an appeal brought to this court by the prosecuting attorney of the city of Euclid, Ohio, under authority of Section 2945.67 *et seq.,* Revised Code, on questions of law from a criminal case, tried to the court in the Euclid Municipal Court, wherein the prosecuting attorney excepted to the decision of the court discharging the defendant charged with violating Section 741.01, titled, "Business Operations on Sunday," of the Codified Ordinances of the City of Euclid, Ohio.

Section 2945.67, Revised Code, "Exceptions by prosecuting attorney," reads:

"The prosecuting attorney or the Attorney General may except to a decision of the court and present a bill of exceptions thereto. The court shall sign said bill and it shall be made a part of the record."

Section 2945.68, Revised Code, "Application by prosecutor to file bill of exceptions," reads:

"The prosecuting attorney or the Attorney General may present a bill of exceptions in a criminal action to the Court of Appeals or the Supreme Court and apply for permission to file it with the clerk of the court for the decision of such court upon the points presented therein. Prior thereto, he shall give reasonable notice to the judge who presided at the trial in which such bill was taken, of his purpose to make such application. If the Court of Appeals or the Supreme Court allows the bill to be filed, the prosecuting attorney or Attorney General shall, within ten days of the filing of the bill, file his brief in support of such exceptions and forthwith serve a copy thereof upon the trial judge and any attorney appointed by the judge to argue the exceptions against the prosecuting attorney or the Attorney General."

The cause is brought to this court by the Law Director and assistant law director of the city of Euclid, who, in the prosecution of criminal cases, are designated, "prosecuting attorney" and "assistant prosecuting attorney," respectively.

Section 1901.34, Revised Code (in the Chapter on Municipal Court), "Criminal Prosecutions," reads as follows:

"* * * The city solicitor, city attorney, or director of law shall perform the same duties, as far as they are applicable thereto, as are required of the prosecuting attorney of the county. * * *"

It seems to us, from the above, that the terminology, "Prosecuting Attorney," in Section 2945.67 *et seq.*, Revised Code, includes the person so designated by a municipality to function in its Municipal Court in criminal cases, and that such officer has the authority to appeal a criminal case decided adversely to the city to the Court of Appeals, and the Court of Appeals has the jurisdiction to review such criminal case when, in the exercise of its sound discretion, it deems the questions of law involved sufficiently important to warrant a review of them for the sole purpose of clarification and enunciation.

In *City of Toledo* v. *Kohlhofer*, 96 Ohio App., 355, paragraph one of the syllabus reads:

'The Court of Appeals has jurisdiction to review a judgment of a Municipal Court in a criminal case adverse to a municipality upon an appeal taken therefrom by such municipality."

The warrant of arrest of the defendant was issued on an affidavit which charged that "one John MacGillis, Manager of Lawson's Store at 417 East 200th Street, on the 18th day of June, 1961, being the first day of the week, commonly called Sunday, did unlawfully suffer or permit a place of business located at 417 East 200th Street, Euclid, Ohio, to be open for the transaction of business, in violation of the Codified Ordinances of the City of Euclid, Ohio, Section 741.01, * * *."

The case was tried on stipulations of fact and seven exhibits received in evidence. On application, under Section 2945.68, Revised Code, the prosecuting attorney was permitted by this court to file a bill of exceptions with the clerk for decision by the court upon the points presented therein.

The stipulations of fact read as follows:

"It is hereby stipulated and agreed between the parties hereto, to-wit: The city of Euclid, Ohio, and John MacGillis, that the stipulation of facts hereafter set forth is true and correct as such facts existed on June 18, 1961, in connection with

the arrest of defendant John MacGillis in the city of Euclid, Ohio:

"1. John MacGillis was on June 18, 1961, the manager of the Lawson Dairy Store located at 545 East 222 Street in the city of Euclid, Ohio, which store was open for business on said date, which was a Sunday.

"2. The said Lawson Dairy Store occupies a building approximately twenty (20) feet in width and eighty (80) feet from the front to the rear with a counter extending across said store room located approximately forty (40) feet from the front of the store, on which counter was located a cash register and over which counter payment was made for commodities purchased by customers.

"3. On June 18, 1961, a sign (hereto attached and marked 'Defendant's Exhibit A') hung from the ceiling of the said store room, parallel with and directly over the counter, the lower edge of which sign was approximately four (4) feet above the said counter with the printed side thereof toward the front of the said store. On said date a second sign (hereto attached and marked 'Defendant's Exhibit B') was located on the front side of the cash register, with the printed side toward the front of the said store room. Between the counter and the front entrance to the said store were three (3) rows of racks and freezer chests, which extended from a point near the front entrance to a point near the counter of the store and on and in which commodities handled by the said store were arranged. Back of the counter, which extended across said store room, were coolers and refrigerated areas where commodities requiring refrigeration were kept. On June 18, 1961, said commodities which were not readily usable in connection with the exemptions provided for under the provisions of the Codified Ordinances of the City of Euclid, Ohio, Section 741.01, such as cleaning powders and supplies, household supplies, cosmetics, school supplies, etc., were covered with cloth covers and no sales of such articles were allowed or made on Sunday.

"4. On June 18, 1961, J. Fitzgerald and O. Willcocks entered the said Lawson Dairy Store, read the signes [sic] (attached hereto and marked 'Defendant's Exhibit A' and 'Defendant's Exhibit B'), and then each executed and delivered to the defendant a Sunday Blue Law purchase form, which forms

as executed by the said Fitzgerald and Willcocks are hereto attached and marked 'Defendant's Exhibit C' and 'Defendant's Exhibit D,' respectively. And, together, Fitzgerald and Willcocks thereupon purchased, paid for and took with them the following commodities:

"1—bottle of milk
"1—Loaf of bread
"1—bag of charcoal
"1—can of charcoal lighter fluid
"1—carton of pop
"1—package of cold prepared meat

at a total purchase price of Two Dollars and Seventy-four cents ($2.74).

"5. The articles which are listed in paragraph 4 of this stipulation as having been purchased by Fitzgerald and Willcocks were used for recreational purposes.

"6. A copy of the Codified Ordinances of the City of Euclid, Ohio, Section 741.01, which it is stipulated was in full force and effect on June 18, 1961, in the city of Euclid, Ohio, is hereto attached and marked 'Euclid Exhibit 1,' which ordinance, except as to the penalty for a violation thereof, is identical to Section 3773.24 of the Revised Code of Ohio."

Defendant's Exhibit A is a banner of stout paper, four and one-half feet long and three feet wide. The lettering is in bold type and the format is as follows:

"Ohio Law Prohibits Sunday Sales,
Except for Items to be Used in Connection with:

| Entertainment | Sports |
| Recreation | Amusement |
| Travel | Necessity (Milk) |

To buy any item today, you must sign a form which the clerk will give you, indicating that you will use the item (s) purchased in connection with one or more of these activities. We regret this necessary inconvenience."

Defendant's Exhibit B is a cardboard placard fourteen inches wide and eighteen inches tall and contrived to stand upright. The lettering and format is similar to the banner:

"Ohio Law Prohibits Sunday Sales,
Except for Items to be Used in Connection with:
    Entertainment
    Recreation
    Travel
    Sports
    Amusement
    Necessity (Milk)
In Order to Comply with the Law, Some Departments
of Our Stores are Closed on Sunday.
We Regret the Inconvenience."

Upon the conclusion and submission of the case, the trial court granted the following motions of the defendant:

"(2) Motion to quash the information and discharge the defendant for the reason that the ordinance is ambiguous, discriminatory, unintelligible and indefinite, and incapable of clear construction as to render it impossible of execution and enforcement.

"(3) Motion to quash the information and discharge the defendant for the reason that the ordinance is null, void and unconstitutional because it contains no criteria or standards to guide the discretion vested in the enforcement of such ordinance.

"(4) Motion to quash the information and discharge the defendant for the reason that the sale of the merchandise was within the exemption of the ordinance."

The prosecuting attorney excepted to these rulings of the trial court.

Since the ordinance, except as to the penalty, is identical with Section 3773.24, Revised Code, titled, "Transaction of business on Sunday; exceptions," a consideration of the cases decided with respect thereto is germane. Sunday closing laws in one form or another have been on the statute books of Ohio for a long time. The first such statute was adopted by the judges in 1788 (1 Chase, 101, Section 22) and has been repeatedly re-enacted by the Legislature with slight modification.

50 Ohio Jurisprudence (2d), 462, Sundays and Holidays, Section 4.

The most recent change occurred in 1959. These statutes have always been under attack in the courts but the general tendency has been to sustain their constitutionality.

50 Ohio Jurisprudence (2d), 466 *et seq.*, Sundays and Holidays, Sections 11, 12, 13.

The Supreme Court, over one hundred years ago, in *Bloom* v. *Richards*, 2 Ohio St., 387, had the following to say on the subject, on page 392:

"* * * Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen at regularly recurring intervals, are too obvious to be overlooked. It was within the constitutional competency of the General Assembly to require this cessation of labor, and to name the day of rest. It did so by the act referred to, and, in accordance with the feelings of a majority of the people, the Christian Sabbath was very properly selected. But, regarded merely as an exertion of legislative authority, the act would have had neither more nor less validity had any other day been adopted."

Fifty years later, in *State* v. *Powell*, 58 Ohio St., 324, 41 A. L. R., 854, the Supreme Court stated the law in paragraph two of the syllabus:

"It is competent to the General Assembly in the exercise of its legislative power to adopt all such wholesome laws as may be necessary to promote the peace, health and well-being of society; laws fixing regularly recurring days of rest from all secular pursuits, such as our Sunday laws, are of this character, and do not violate the personal liberty of the individual, secured by the *first* section of our bill of rights."

And as recently as 1958, the Supreme Court reaffirmed the position it has uniformly taken with respect to Sunday closing laws in the following language of the syllabus in *State* v. *Kidd*, 167 Ohio St., 521 (appeal dismissed by United States Supreme Court, 358 U. S., 132, 3 L. Ed. (2d) 225, 79 S. Ct., 235):

"1. Section 3773.24, Revised Code, commonly called the Sunday closing law, is a valid, constitutional and enforceable enactment and is not vulnerable to the attack that it is a measure for the enforcement or promulgation of religious observances.

"2. 'Work of necessity or charity' is exempted from the

operation of Section 3773.24, Revised Code. The word, 'necessity,' is an elastic one, and what constitutes work of necessity is often a question of fact dependent on the circumstances surrounding the particular case.

"3. The lawmaking branch of a state government in the exercise of its police power has the constitutional authority to make classifications and selections of those activities which it deems should or should not be prohibited on Sundays, and, so long as those classifications are not arbitrary, capricious or unreasonable and do not discriminate among the same classes or kinds of pursuits, they are valid."

The statute upon which that decision was based read:

Section 3773.24. Laboring or requiring employee to labor on Sunday. "No person who is over fourteen years of age shall engage in common labor or open or cause to be opened, a building or place for transaction of business, or require a person in his employ or under his control to engage in common labor on Sunday. In prosecutions under this section complaints shall be made within ten days after a violation.

"This section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the sabbath, and abstain thereon from doing things prohibited on Sunday.

"This section does not prevent emigrating families from traveling, watermen from landing their passengers, or keepers of toll bridges, tollgates, or ferries from attending them on Sunday."

The Legislature amended the statute upon which the *Kidd case, supra,* was based, which amended statute (128 Ohio Laws, 1219) became effective on July 17, 1959, and reads as follows:

Section 3773.24. Transaction of business on Sunday; exceptions. "No person, firm, or corporation shall engage in common labor or suffer or permit a building or place to be open for transaction of business, or require a person in his employ or under his control to engage in common labor or to open a building or place for the transaction of business on Sunday. In prosecutions under this section complaints shall be made within ten days after a violation.

"This section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe

the seventh day of the week as the sabbath, and abstain thereon from doing things prohibited on Sunday.

"This section shall not apply to:

"(A) Traveling or the providing of services and commodities incidental thereto;

"(B) Recreation, sports, amusements, entertainment, or exhibitions or the providing of services and commodities incidental thereto;

"(C) Fairs held under the authority of the state or a political subdivision, or independent fairs, or the providing of services and commodities incidental thereto;

"(D) The operation of publicly owned places of entertainment, recreation, or education, by a public officer, concessionaire, exhibitor, or employees of all or any of them, or any other person, or the providing of services and commodities incidental thereto."

Comparison of Section 3773.24, Revised Code, as it read when the *Kidd case* was decided and as it now reads is illuminating:

| Statute considered by the Supreme Court in *Kidd case*: | Statute as amended in 1959: |
|---|---|
| Title: "Laboring or requiring employee to labor on Sunday." | "Transaction of business on Sunday; exceptions." |
| Main body, (in substance, the same) | Prohibits any person, firm, or corporation from engaging in common labor, opening or causing to be opened a building or place for the transaction of business, or requiring a person in his employ or under his control to engage in common labor on Sunday. |

Exceptions:

1. Work of necessity.

2. Charity.

3. Persons observing the seventh day of week as the sabbath.

4. Traveling of emigrating families, watermen landing their passengers, keepers attending toll bridges, tollgates, or ferries.

1. Work of necessity.

2. Charity.

3. Persons observing the seventh day of week as the sabbath.

4. (A) Traveling or the providing of services and commodities incidental thereto.

5. (B) Recreation, sports, amusements, entertainment, or exhibitions, or the providing of services and commodities thereto.

6. (C) Fairs, etc.

7. (D) Publicly owned places of entertainment, etc.

It should be noted from the outline above that the only significant change made by the General Assembly by the amended statute of July 17, 1959, is the addition of three new classifications and the providing of services and commodities incidental to each, as exceptions.

It was stipulated in the trial of this case that the defendant, as the manager of the Lawson store in question, had opened a place for the transaction of business on Sunday. The transaction of business is expressly prohibited by the ordinance under which he was charged, and he, therefore, was guilty of violating the ordinance unless he had shown that the business transacted was exempted under an exception specified in the ordinance.

Council for the trial court maintains that, since the facts admittedly show that the articles purchased were obtained and actually used for recreational purposes and that since under paragraph (B) "the providing of services and commodities incidental" to recreation is excepted from the operation of the

ordinance, the trial judge properly granted the "motion to quash the information and discharge the defendant for the reason that the sale of the merchandise was within the exemption of the ordinance."

We do not agree with this contention.

It is patent, upon a careful reading of Section 3773.24, Revised Code, that the Legislature added paragraph (B) as an *exception* to the main purpose of this law. The main purpose of the enactment is to afford each person engaged in common labor and business *a day of rest*. The statute prohibits a person, firm or corporation from engaging in common labor, suffering or permitting a building or place to be open for the transaction of business or requiring a person in his employ or under his control to engage in common labor on Sunday.

The opinion of the trial court is made part of the bill of exceptions filed in this action. The court decided this case on the exemption set forth in paragraph (B), stating that, "since the items purchased, stipulations of facts, and the exhibits restrict the use of items purchased to 'recreation,' and Section (b), the court will restrict its interpretation to Section (b). The court is of the opinion that the remaining exemption section as well as the prohibitory first paragraph of the ordinance are not in issue and it is not within the power or the authority of the court to attempt to interpret them."

It is stated in 37 Ohio Jurisprudence, 504, Statutes, Section 274:

"In the interpretation or construction of statutes, the primary and paramount rule is to ascertain, declare, and give effect to the intention of the Legislature, as gathered from the provisions enacted, by the application of well-settled canons of interpretation, since the ultimate function of construction is to ascertain the legislative will. A correct construction is given only when the intention of the General Assembly is ascertained. * * *"

The same principle of law is applicable to the ordinance in question here. The title of the ordinance reveals the intention of the council in passing it. It reads, "Business operation on Sunday." The paramount purpose is to protect the health and welfare of the community by providing a day of rest on Sunday for all individuals by prohibiting them from engaging in com-

mon labor or transacting or operating any business on that day. Exceptions were found to be needed. Paragraph (B) was added, together with paragraphs (A), (C) and (D), to the statute in 1959, in order to liberalize the law and to conform it more perfectly to modern urban society and life. In interpreting paragraph (B) it is necessary and important to keep in mind the fundamental purpose for the law, namely, to afford a day of rest to persons involved in labor of one sort or another. Hence, under paragraph (B), persons employed by or engaged in a business or transaction having to do with recreation, sports, amusements, entertainment or exhibitions, are exempted from the operation of the law and may perform their work and operate and transact such business on Sunday.

In *Carter* v. *Division of Water, City of Youngstown*, 146 Ohio St., 203, the Supreme Court stated in the first paragraph of the syllabus:

"In the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used."

The word, "incidental," occurs in each of the four classifications added as exceptions to the amended statute.

Webster's New International Dictionary, Second Edition, defines "incidental" as:

"1. Happening as a chance or undesigned feature of something else; casual; hence, *not of prime concern*; *subordinate*; * * *." (Emphasis added.)

Now it cannot be said that the items sold to Fitzgerald and Willcocks by the Lawson Company were "not of prime concern" to it because such items constituted commodities representing the business in which said Lawson Company was chiefly engaged. Nor was such sale a "subordinate" activity to the operation of a business furnishing recreation to Fitzgerald and Willcocks. It, therefore, was not the "providing of commodities incidental thereto" (recreation) under the plain language of paragraph (B) of the exceptions in the ordinance.

It necessarily follows that the milk, bread, charcoal, char-

coal lighter fluid, pop and cold prepared meat, though actually used for recreational purposes by the purchasers, did not come within the exception of the ordinance and, as a consequence, the trial court was in error in holding that such sale was exempted from the operation of the ordinance.

The extraordinary measures taken by the Lawson Company in segregating commodities to be used in connection with entertainment, recreation, travel, sports, and amusement, in informing its customers of the law, as it viewed the law to be, and in obtaining written commitments from them that the items purchased would only be used for such activities, were of no avail. The business transacted did not come within the purview of exception (B) and was in violation of the ordinance.

Counsel for the trial court argues that exception (B) was intended to permit any citizen of the state to engage in the recreation of his choice and to have the right to purchase the commodities needed for such enjoyment on Sunday, since exceptions (C) and (A) refer to mass entertainment and exception (B) is meaningless unless it is intended to refer to private recreation. In so arguing, the basic intent of the law is lost sight of. This exception has nothing to do with the private recreation of citizens. It exempts a person, firm or corporation from the operation of the law when engaged in common labor or the operation of or the transaction of business having to do with recreation. If a person desires to go on a picnic on Sunday, he is certainly free to do so. And if he desires to take along certain items in the form of food, drink, and material to build a fire, he must purchase them, as he does food for his Sunday meals, on a day other than Sunday. However, if he should attend a football game in the Cleveland Stadium on Sunday, the promoters, under exception (B), are permitted to provide him with the form of recreation inherent in such pastime and are also permitted to provide him with incidental commodities such as refreshments and a program to make his enjoyment complete.

An exception to an ordinance or statute must be construed in connection with the law as a whole and the intention of the lawmaking body with respect to it determined from the language employed in conjunction with the paramount object to be subserved by the enactment. To consider an exception alone without relating the words employed to the law as a whole would

only result in confusion. This is what was done by the trial court.

In *Cochrel, a Minor,* v. *Robinson,* 113 Ohio St., 526, the Supreme Court said in paragraph four of the syllabus:

"In the construction of a statute the primary duty of the court is to give effect to the intention of the Legislature enacting it. Such intention is to be sought in the language employed and the apparent purpose to be subserved, and such a construction adopted which permits the statute and its various parts to be construed as a whole and give effect to the paramount object to be attained."

See 37 Ohio Jurisprudence, 504, Statutes, Section 274; *Slingluff* v. *Weaver,* 66 Ohio St., 621.

There is no need for any criteria or set of standards as a guide to officials in the enforcement of an ordinance or statute which employs ordinary words to portray exceptions to its operation. The word, "recreation," is an elastic one, and what constitutes the operation or the transaction of a business engaged in recreation is often a question of fact to be determined from all the circumstances surrounding a particular situation. *State* v. *Kidd, supra,* paragraph two of the syllabus.

Section 3773.24, Revised Code, prior to its amendment in 1959, was declared a constitutional enactment of the Legislature by the Supreme Court.

The mere addition of exceptions to the general purpose of the law cannot affect its constitutionality.

See, *State* v. *Giant Tiger Drugstore, Inc.* (Conviction under Section 3773.24, Revised Code, by *same Euclid Municipal Court* under present statute). Judgment affirmed, without opinion, by this Court of Appeals, Case No. 25137. Appeals to the Ohio Supreme Court and the United States Supreme Court dismissed. 171 Ohio St., 294, 366 U. S., 762.

Accordingly, exceptions are allowed.

*Exceptions allowed.*

SKEEL and HURD, JJ., concur.