The owner of a parcel of property placed it on the market for sale but was told by Mayfield Village's building commissioner that the property was not buildable under Mayfield Village's zoning code. The owner filed this action in part to obtain a declaration that her property was exempt from the zoning ordinances on which Mayfield Village relied and therefore was a buildable lot. The trial court agreed, determining that the parcel was not subject to the zoning ordinances in issue and declaring the property to be buildable. Mayfield Village appeals. Because we find no error in the lower court's judgment, we affirm.
The property at issue here is one of three contiguous but separate lots located on Worton Park Drive in Mayfield Village and identified as Sublots 12, 13, and 14.[1] The parties have stipulated that each sublot has been on record in the Cuyahoga County Recorder's Office since at least 1943. Each sublot has a frontage measuring 74 feet and a depth measuring 263 feet.
In 1946, Mayfield Village amended its zoning ordinance to provide that no dwelling may be erected to accommodate a family on a lot of less than 15,000 square feet or with a frontage of less than 75 feet. The ordinance expressly exempted from its application any numbered lot in a recorded subdivision that was on record in the office of the county recorder when the ordinance was passed. Based on the parties' stipulations, there is no dispute that sublots 12, 13, and 14 were numbered lots in a subdivision on record in the office of the county recorder when the 1946 ordinance was passed and thus were exempt from its application.
In 1990, JoAnn Erich purchased all three sublots. A single family residence and garage were located on Sublot 13, the middle lot. Sublots 12 and 14, located on either side of the dwelling, were vacant. Erich purchased all three lots with the intention of clearing debris from the two vacant lots and eventually selling them to offset the purchase price of the property. At the time of the purchase, she confirmed that all three sublots had separate permanent parcel numbers and sublot numbers to insure that they could be sold as separate, buildable lots. All three sublots were contained within a split-rail fence at the time of Erich's purchase, and all three were overgrown and neglected. Erich subsequently removed the split rail fence and cleared the debris from all three lots.
Erich maintained Sublots 12 and 14 as additional lawn and garden space. Prior to 1995, the Cuyahoga County Auditor had combined all three sublots for tax purposes, and Erich received a unified tax bill for all three lots until that time. As of 1995, all three lots had a single mailing address, that being 872 Worton Park Drive.
In 1993, Mayfield Village amended section 1181.03 of its zoning ordinances to state that no dwelling may be erected to accommodate a family on a lot of less than 20,000 square feet or with a frontage of less than 125 feet. Mayfield Village simultaneously amended section 1181.06 to state that no single-family dwelling may be erected on a lot having less than an average width of 125 feet. These ordinances superseded the former ordinances which had smaller square footage and frontage requirements. Both ordinances expressly exempted from their application numbered lots in a subdivision that were on record in the office of the county recorder when the 1993 amendments were passed.
In September 1995, Erich sold Sublot 14.[2] The new owner built a single family home on the property and was assigned the separate mailing address of 880 Worton Park Drive. Mayfield Village did not identify any violation of its zoning laws.
In June 1996, Erich placed Sublot 12 on the market for sale. Building Commissioner Samac informed Erich that Sublot 12 was not a buildable lot and should be disclosed as such. According to Samac, Sublot 12, if sold separately from Sublot 13, would have a frontage of 74 feet, which would not qualify as a buildable lot under the current ordinances regulating lot size.
Erich subsequently filed this action for declaratory relief asking the court to declare that the zoning ordinances on which Mayfield Village relied did not apply to Sublot 12 or, alternatively, that those ordinances were unconstitutional as applied to this property, entitling Erich to damages and/or just compensation. The matter proceeded on cross motions for summary judgment. The trial court determined that Sublot 12 was a numbered lot in a recorded subdivision before Mayfield Village amended sections 1181.03 and 1181.06. The court ruled that the savings clauses in those ordinances grandfathered Sublot 12 into the class of buildable lots not subject to the requirements of those ordinances. The court declared:
 [T]he above described ordinances do not apply to sublot 12 as to require 20,000 square feet and frontage of 125 feet in order for it to contain a single family residence. Assuming all other requirements of defendant's ordinances are satisfied, plaintiff's sublot 12 is a buildable lot.
By holding that the ordinances did not apply, the court determined that no compensable taking of Erich's property occurred, so she was not entitled to monetary damages.
Mayfield Village appealed and raised one assignment of error:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
The assignment of error is not well taken.
Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). See Lee v. Sunnyside Honda (1998), 128 Ohio App.3d 657,660; N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434,440. Applying that standard here, we find no error by the trial court.
The trial court determined that Mayfield Village's own zoning ordinances exempted these parcels from their application and thus rendered sublot 12 to be a buildable lot. A court's paramount concern in construing a statute is the legislative intent in its enactment. See State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn. (2000), 87 Ohio St.3d 564, 565. The court must look first to the statutory language, and the words and phrases used must be read in context and construed according to the rules of grammar and common usage. Id. When the language in a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory construction and the statute must be applied accordingly. See Symmes Twp. Bd. of Trustees v. Smyth (2000), 87 Ohio St.3d 549, 553; In re Guardianship of Lombardo (1999), 86 Ohio St.3d 600, 605. By the same token, an exception to the operation of a law must receive a strict but reasonable construction. State ex rel. Keller v. Forney (1923), 108 Ohio St. 463, syllabus at para. 1. Thus in City of Euclid v. MacGillis (1962), 117 Ohio App. 281, the court observed:
 An exception to an ordinance or statute must be construed in connection with the law as a whole and the intention of the lawmaking body with respect to it determined from the language employed in conjunction with the paramount object to be subserved by the enactment.
Id. at 293.
A review of Mayfield Village's ordinances confirms that because Sublot 12 was a numbered lot on record in the Cuyahoga County Recorder's Office since at least 1943, it was not subject to the restrictions contained in sections 1181.03 or 1181.06. In particular, the 1946 amendment to Mayfield Village's zoning ordinance stated:
 In a class A1 [area] district no dwelling shall be erected or altered to accommodate or make provision for more than one family for each 15,000 square feet of the area of the lot and no such lot shall have a frontage of less than 75 feet. Provided that one single family dwelling may be erected on any lot separately owned at the time of the passage of this ordinance or on any numbered lot in a recorded subdivision that was on record in the office of the county recorder at the time of the passage of this ordinance. (Emphasis added.)
Mayfield Village does not dispute that sublots 12, 13, and 14 were thus exempted from the 1946 zoning amendment.
Mayfield Village's 1993 zoning ordinances similarly exempt pre-existing recorded numbered lots. Amended section 1181.03
provides:
 (a) In a Class A-1 [area] District, no dwelling shall be erected or altered to accommodate or make provision for more than one family for each 20,000 square feet of the area of the lot, and no such lot shall have a frontage of less than 125 feet. Provided that a single-family dwelling house may be erected on any numbered lot in a recorded subdivision that was on record in the office of the County Recorder at the time of the passage of this section. (Emphasis added.)
Amended section 1181.06 likewise provides:
 In any district where permitted, no single-family dwelling or no two-family dwelling shall be erected on a lot having an average width of less than 125 feet, unless such lot was separately owned at the time of the passage of this section, or unless such lot is a numbered lot in a subdivision that was on record in the office of the County Recorder at the time of the passage of this section * * *. (Emphasis added.)
The express savings clause under each ordinance convinces us that because Sublot 12 was a numbered lot in a recorded subdivision on record in the office of the county recorder before either the 1946 or the 1993 zoning amendments were adopted, those amendments do not apply to Sublot 12. Consequently, those amendments cannot be used by Mayfield Village to prevent a single-family dwelling from being erected on Sublot 12. Exempting Sublot 12 from these restrictions is consistent with Mayfield Village's treatment of Sublot 14, which Erich sold in 1995 and which Mayfield Village acknowledges was not subject to either the 1946 or 1993 zoning amendments and was therefore buildable.
Mayfield Village insists that Sublot 12 is different from Sublot 14 because encroachments from Sublot 13 caused Sublot 12 to be "developed" in conjunction with Sublot 13 for a single family use and thus Sublot 12 became a conforming use under sections1181.03 and 1181.06.[3] Mayfield Village has not furnished us with any legal authority suggesting that an encroachment from one parcel onto an adjoining parcel determines the permissible use of the encroached parcel. We assuredly see no meaningful distinction between Sublot 14, which Mayfield Village does not deny was buildable in 1995, and Sublot 12, which supposedly was not buildable in 1996. Mayfield Village's argument must fail in any event, however, because, by their express exemptions, sections1181.03 and 1181.06 cannot apply to either pre-existing recorded numbered Sublot 12, 13 or 14.
Mayfield Village alternatively argues that Sublot 12 was undeveloped land and therefore cannot qualify as a prior non-conforming use because it was not being used. See, e.g., Smith v. Juillerat (1954), 161 Ohio St. 414 [161 Ohio St. 424]; State ex rel. Bugden Development Co. v. Kiefaber (1960), 113 Ohio App. 523. We must reject that argument, however, based on Negin v. Bd. of Bldg. and Zoning Appeals (1982), 69 Ohio St.2d 492. In Negin, the sublot in question, having a frontage of 44.79 feet and a depth of 110 feet, had been on record since 1923 but remained undeveloped. The City of Mentor enacted a zoning ordinance in 1963 which required a frontage of 75 feet and an area of 15,000 square feet. In 1978, Negin requested variances and a declaration from the Mentor Board of Building and Zoning Appeals that his lot was buildable. The board denied his requests and the common pleas court affirmed on administrative appeal, but the court of appeals reversed. Affirming that judgment, the Supreme Court of Ohio ruled that Mentor's zoning ordinance could not be applied to property which pre-dated the zoning ordinance and would have been rendered useless for any practical purpose unless the owner purchased additional land. See also Malton v. Pierce Tp. Bd. of Zoning Appeals (Apr. 11, 1994), Clermont App. No. CA93-09-069, unreported; Schreiner v. Russell Tp. Bd. of Trustees (1990), 60 Ohio App.3d 152.
Similarly, Sections 1181.03 and 1181.06 of Mayfield Village's zoning ordinances could not be applied to Sublot 12 because it pre-dated the ordinances and because application of those ordinances to this parcel would have rendered the land useless for any practical purpose. Moreover, because there has been no change in Sublot 12 from a non-conforming use to a conforming use and because the contemplated use remains that for a single-family dwelling, neither section 1149.06 or 1149.07 of Mayfield Village's ordinances are applicable here.
As a result of our review of the language of the relevant ordinances, we agree with the trial court's determination that Sublot 12 was not subject to Sections 1181.03 and 1181.06 of Mayfield Village's zoning code. Accordingly, we overrule Mayfield Village's assignment of error and affirm the judgment.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ DIANE KARPINSKI, JUDGE
TIMOTHY E. McMONAGLE, J., CONCURS; ANN DYKE, A.J., CONCURS IN JUDGMENT ONLY.
[1] Sublot 12 correlates with Permanent Parcel Number (PPN) 831-33-038; Sublot 13 correlates with PPN 831-33-037; and Sublot 14 correlates with PPN 831-33-036. We will hereafter refer to them by their respective Sublot number.
[2] There is some dispute over whether Sublot 14 was subject to an encroachment at that time. Mayfield Village Building Commissioner Bernie Samac denied that any encroachment existed when Sublot 14 was sold in 1995, whereas Erich insisted that the encroachment was present when she sold the lot in 1995.
[3] While it is undisputed that the garage and driveway apron appurtenant to the residence on Sublot 13 encroached onto Sublot 12, other matters are in dispute. For instance, Samac maintained that a detached garage and a walkway surrounding the garage encroached upon Sublot 12, whereas Erich averred that the garage was attached, not detached; the walkway surrounding the garage no longer existed; and the total square footage of the garage encroachment, measuring 7.5 feet, and the driveway apron encroachment, measuring 4.5 feet, was 1% of the land area of Sublot 12. Samac also identified a portion of Ms. Erich's septic system as an encroachment onto Sublot 12, but Erich countered that the septic system would be removed as soon as Mayfield Village provided her with a sewer hook-up as it had for all her neighbors. But whether or not there existed such encroachments presents no material issue of fact in this case.