MARANO ET AL., APPELLANTS, *v.* GIBBS ET AL., APPELLEES.

[Cite as Marano *v.* Gibbs (1989), 45 Ohio St. 3d 310.]

(No. 88-1309—Submitted May 31, 1989— Decided September 20, 1989.)

*Wiles, Richards & Bates, John W. Wiles* and *Patricia A. Nocero,* for appellants.

*Baker, Hackenberg & Collins Co., L.P.A.,* and *Richard L. Collins, Jr.,* for appellees.

SWEENEY, J. Two main issues are presented for our review. First, we must determine whether the court of appeals below was correct in reversing the trial court and holding that the lessees-users of the radio towers are public utilities. Second, we must consider whether former R.C. 519.21 exempts such land and structures from township zoning.

With respect to the first issue presented, all parties agree that the determination of entities as public utilities is a mixed question of law and fact. The definitions of a "public utility" set forth in R.C. 4905.02, 4905.03 and 5727.01 are not exclusive since those definitions are relevant solely to the statutory chapters in which they are located. *Vernon* v. *Warner Amex Cable Communications, Inc.* (1986), 25 Ohio St. 3d 117, 119, 25 OBR 164, 166, 495 N.E. 2d 374, 376. Inasmuch as R.C. Chapter 519 does not define a "public utility," we look to relevant case law for such a determination.

Research indicates that while it is important that an entity be subject to regulatory control, such regulation is not necessarily required for an entity to be considered a public utility. *Ohio Power Co.* v. *Attica* (1970), 23 Ohio St. 2d 37, 40, 52 O.O. 2d 90, 92, 261 N.E. 2d 123, 126.

In *Attica,* this court emphasized that an important factor in determining public utility status is the character of the business in which the entity is engaged. *Id.* at 41, 52 O.O. 2d at 92, 261 N.E. 2d at 126. See, also, *Industrial Gas Co.* v. *Pub. Util. Comm.* (1939), 135 Ohio St. 408, 14 O.O. 290, 21 N.E. 2d 166, paragraph one of the syllabus. We have also held:

"To constitute a 'public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state." *Southern Ohio Power Co.* v. *Pub. Util. Comm.* (1924), 110 Ohio St. 246, 143 N.E. 700, paragraph two of the syllabus.

In sum, the foregoing precedents indicate that an entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public.

In our view, the court of appeals below was correct in finding all three lessees of space on appellees' towers to be public utilities. The record indicates that both Digital and RAM are regulated by the PUCO, and that both possess a certificate of public convenience and necessity to dispense the services that they provide. Based on the stipulations rendered below and the language in the certificates that the services provided are "to the public" within a definable geographic area, it is clear that membership in Digital and

RAM is available reasonably and indiscriminately to any member of the general public. Thus, both Digital and RAM exhibit sufficient indicia of public-utility status as defined by abundant case law. While Motorola, Inc. is not regulated by the PUCO, it was stipulated that membership in the company is reasonably and indiscriminately provided to the general public. In addition, the services Motorola, Inc. provides and the nature of its operation are very similar to those of both Digital and RAM. Therefore, it readily appears that Motorola, Inc. can be characterized as a public utility. Accordingly, based on the stipulations and aforementioned precedents, we affirm the appellate court's finding that all three lessees of the radio towers are public utilities.

Since the three lessees of the radio towers are public utilities, our next inquiry is whether former R.C. 519.21 prohibits township zoning on the *use* of land or structures for business purposes by any public utility. The appellants contend that the exemption contained in former R.C. 519.21 applies only to public utilities that are lessors-owners of land, buildings or structures. However, we do not agree with appellants that the statute contemplates such a narrow reading.

R.C. 519.21 provided in relevant part:

"Such sections [R.C. 519.02 to 519.25] confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, *or the use of land by any public utility* or railroad, for the operation of its business. * * *" (Emphasis added.)

In our view, appellees are correct in submitting that as it relates to public utilities, the first part of the statutory language above restricts regulation of buildings or structures *of* any public utility. A review of R.C. Chapter 519 reveals no special statutory definition to be accorded throughout the chapter for the term "use." Under such circumstances, where the term is unambiguous, any term left undefined by statute is to be accorded its common, everyday meaning. See, *e.g., Eastman* v. *State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E. 2d 140, paragraph five of the syllabus. Thus, research reveals that one of the common, everyday meanings of the term "use" includes the exercise, employment or occupation of property. See Random House Dictionary of the English Language (2 Ed. 1987) 2097.

Based on the record developed below, it is clear that all the lessees *use* appellees' radio towers as contemplated by R.C. 519.21. This use of the towers includes transmission of electronic signals from the towers, as well as use of the building between the towers for the equipment necessary to accomplish the transmission of electronic signals. Since R.C. 519.21 is unambiguous, and because the towers, land and structures are used by public utilities in the performance of their business, the towers, land and structures are thereby exempt from township zoning regulation under the statute.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting. I respectfully dissent. There are three separate and distinct parties to this appeal. The first party consists of the plaintiffs-appellants, who are the respective zoning inspectors for Concord and Painesville Townships. The second party is referred to as the defendants-appellees, who are the lessors of the two radio towers and the adjoining building, which properties are the subject of the present case. The third party is a group of three lessees (Digital, RAM and Motorola), all of whom are currently renting frequency "space" on the radio towers.

The trial court properly determined that appellees-lessors were not public utilities, and therefore not within the exclusion from zoning regulations as contained in former R.C. 519.21. The court of appeals, however, went one step further in finding that because the lessees were public utilities, they were within the above exclusion from zoning regulations. For the following reasons, I would reverse this decision of the court of appeals.

The authority of townships to regulate land is governed by R.C. 519.02, which contains a necessarily broad grant of power to local governments in this area of Ohio law. The statute provides that "[f]or the purpose of promoting the public health, safety, and morals, the board of township trustees may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures * * *."

However, the grant of authority is specifically limited by the then applicable R.C. 519.21 (now R.C. 519.211), which stated in pertinent part:

"Such sections [R.C. 519.02 and 519.25] confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business. * * *"

Thus, the statute clearly excludes public utilities and railroads from local zoning regulations. Furthermore, "* * * [t]his court has long held that statutory exceptions to the operations of laws should receive a strict interpretation (see *Kroff* v. *Amrhein* [1916], 94 Ohio St. 282, 286)." *Boys Town* v. *Brown* (1981), 69 Ohio St. 2d 1, 6, 23 O.O. 3d 1, 4, 429 N.E. 2d 1171, 1174. It can be gleaned from the face of the statute that lessors of land who lease to public utilities are not excluded from local zoning laws. In effect, the appellate court and the majority have exempted from local zoning regulations a class of persons, namely lessors of land, simply by the type of party to whom they rent space.

This is an impermissible judicial expansion of R.C. 519.21, and in fact abrogates the authority of a local municipality's power to regulate land under R.C. 519.02. Well-established Ohio case law recognizes the presumptive validity of local zoning resolutions enacted pursuant to a municipality's police power when promoting public health, safety and morals. See *Leslie* v. *Toledo* (1981), 66 Ohio St. 2d 488, 490, 20 O.O. 3d 406, 407, 423 N.E. 2d 123, 124, and cases cited therein.

On this basis, it is error to extend the exclusion granted to public utilities to a landlord who may simply ignore a local zoning resolution, and then circumvent said resolution by renting to a public utility. Therefore, I respectfully dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.