CAMPANELLI, DIR., APPELLANT, v. AT&T WIRELESS SERVICES, INC. ET AL., APPELLEES.

[Cite as *Campanelli v. AT&T Wireless Serv., Inc.* (1999), 85 Ohio St.3d 103.]

(Nos. 98–46 and 98–94—Submitted December 1, 1998—Decided March 24, 1999.)

104

*Robert D. Horowitz*, Stark County Prosecuting Attorney, and *Scott R. Piepho*, Assistant Prosecuting Attorney, for appellant.

*Kegler, Brown, Hill & Ritter Co., L.P.A., William J. Brown, Gene W. Holliker* and *Robert G. Schuler; Graves & Horton, Donet D. Graves* and *Harold C. Reeder,* for appellee AT&T Wireless Services, Inc.

*Calfee, Halter & Griswold L.L.P., Albert J. Lucas* and *Maura L. Hughes,* for intervenor-appellee Ameritech Wireless Communications, Inc.

*Jones, Day, Reavis & Pogue, Kathleen B. Burke* and *Randall A. Cole,* urging affirmance for *amicus curiae,* Nextel Communications, Inc.

MOYER, C.J. The sole issue to be determined by this court is whether wireless telecommunications providers, such as appellees, AT&T and Ameritech, are public utilities for the purposes of R.C. 519.211. Appellant, Nicholas R. Campanelli, asserts that wireless telecommunications providers are not public utilities within the scope of R.C. 519.211, and are thus subject to the restrictions contained in local zoning ordinances. Appellees, AT&T and Ameritech, however,

contend that wireless telecommunications providers are public utilities and are therefore exempt from local zoning ordinances pursuant to R.C. 519.211.

In order to determine whether wireless telecommunications providers are public utilities within the meaning of R.C. 519.211, we must look to the words of the statute. This section of the Revised Code provides:

"(A) Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility * * *."

While this section of the Revised Code exempts public utilities from township zoning regulations in most circumstances, division (B) designates certain circumstances in which zoning boards may exercise power over the construction of telecommunications towers, even if the tower is the property of a public utility. This division provides:

"(B)(1) As used in this division, 'telecommunications tower' means any freestanding structure * * * that meets *all* of the following criteria: * * * " (Emphasis added.)

Division (B)(1)(a) through (e) lists several criteria that all must be met in order for a zoning board to exercise control over the construction of a telecommunications tower. However, the record indicates that the telecommunications tower proposed by AT&T in this case does not meet all the guidelines set forth in division (B). Specifically, the proposed tower is not to be erected in "an area zoned for residential use" as required under division (B)(1)(c). Instead, the tower is to be built in an area zoned B–2 General Business. Therefore, construction of the tower cannot be regulated by the township zoning board pursuant to R.C. 519.211(B).

Appellant argues that wireless telecommunications providers cannot be public utilities within the meaning of R.C. 519.211. However, this argument fails when we consider the language of the statute. Division (B) of this section clearly outlines certain circumstances in which telecommunications towers owned or operated by public utilities may be regulated by township zoning boards. If we accept appellant's argument, division (B) would be meaningless. If telecommunications providers are never public utilities, there would be no need to enact this division subjecting certain telecommunications towers to township zoning restrictions. By enacting R.C. 519.211, the General Assembly obviously intended to include wireless telecommunications providers within the scope of the statute, while providing a limited number of circumstances in which township zoning boards may regulate the construction of telecommunications towers.

Case law interpreting R.C. 519.211 also supports a finding that wireless telecommunications providers are public utilities within the scope of R.C. 519.211. Because R.C. Chapter 519.211 does not include a definition of the term "public utility," we look to relevant case law to determine whether wireless telecommunications providers are public utilities pursuant to R.C. 519.211.

The determination of whether an entity is a public utility is a mixed question of law and fact. *Marano v. Gibbs* (1989), 45 Ohio St.3d 310, 311, 544 N.E.2d 635, 636. While the definition of "public utility" is flexible, an entity must prove the existence of certain attributes or its claim of public-utility status will fail. *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees* (1992), 64 Ohio St.3d 385, 596 N.E.2d 423, syllabus. In *Marano,* this court held that "an entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public." *Id.* at 311, 544 N.E.2d at 637.

Although no one factor is controlling in determining whether an entity conducts its operation in such a manner as to be a matter of public concern, we must weigh several, including lack of competition in the local marketplace, the good or service provided, and the existence of regulation by government authority, in order to determine whether an entity conducts its business in such a way as to become a matter of public concern. *A & B Refuse* at 388, 596 N.E.2d at 426. Here, the record indicates that appellees do operate their businesses in such a manner as to be a matter of public concern.

Appellees essentially provide a telephone service, which is traditionally recognized as a matter of public concern. In addition, wireless telecommunications providers must obtain a license from the Federal Communications Commission. See Section 301 *et seq.,* Title 47, U.S.Code; Section 24.1, Title 47, C.F.R. Although appellees do not occupy a monopolistic position in their field, this factor is of less importance, taking into account deregulation and the changing nature of public utilities. Therefore, we find that wireless telecommunications providers, such as appellees, do conduct themselves in such a manner as to be a matter of public concern.

Appellees also must provide their services to the public in a reasonable and indiscriminate manner. As a common carrier, see Section 153(10), Title 47, U.S.Code, appellees are required to provide telecommunications services to consumers "upon reasonable request therefor * * *." Section 201(a), Title 47, U.S.Code. In addition, appellees are prohibited from making "any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services * * *." Section 202(a), Title 47, U.S.Code. These federal requirements assure that telecommunications providers provide their services to the public in a reasonable and indiscriminate manner.

In *Marano*, 45 Ohio St.3d 310, 544 N.E.2d 635, this court held that companies which supplied two-way telephone services, mobile telephone services, voice paging systems, and radio communications systems are public utilities within the meaning of R.C. 519.211. Taking into account the similarity of the services provided by the companies in *Marano* and those provided by appellees, it follows that the principles established in *Marano* should govern our holding in this case, and that appellees are public utilities within the scope of R.C. 519.211.

R.C. 519.211 was intended to exempt public utilities providers from regulation by township zoning boards and boards of zoning appeals. The intent of the General Assembly to include wireless telecommunications providers within the scope of this section of the Revised Code is evidenced by the specific exceptions related to telecommunications towers contained in division (B) of the statute. In addition, relevant case law supports a finding that wireless telecommunications providers such as appellees are public utilities within the scope of R.C. 519.211. For all of these reasons, we find that wireless telecommunications providers are public utilities for the purposes of R.C. 519.211.

As an alternate ground to support the decision of the court of appeals, appellees assert that Plain Township's Zoning Resolution 310.2 exempts telecommunications providers such as appellees from local zoning regulations. Section 310.2 provides:

"Such sections confer no power on any Board of County Commissioners, Board of Township Trustees, or Board of Zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business except as provided by any law of the State of Ohio. Ohio Revised Code 519.21."

In addition, the zoning resolution further provides a definition of the term "public utility" in Article IV of the resolution. This definition reads as follows:

"*PUBLIC UTILITY*: Any person, firm, corporation, governmental agency, or board fully authorized to furnish and furnishing to the public, electricity, gas, steam, *telephone*, telegraphy, transportation, water, and any other similar public utility." (Emphasis added.)

As we have previously noted, appellees provide what is essentially a telephone service. In addition, Plain Township's resolution failed to distinguish between traditional and wireless telephone service providers. Thus, by its own definition of the term "public utility," Plain Township has specifically excluded businesses

providing wireless telecommunications services from compliance with its zoning regulations.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, WAITE, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

CHERYL L. WAITE, J., of the Seventh Appellate District, sitting for RESNICK, J.

---

PFEIFER, J., dissenting. "[A]n entity may be characterized as a public utility if the nature of its operation is a matter of public concern." *Marano v. Gibbs* (1989), 45 Ohio St.3d 310, 311, 544 N.E.2d 635, 637. To determine whether the nature of an entity's operation is a matter of public concern, the majority states that three principal factors must be considered: "lack of competition in the local marketplace, the good or service provided, and the existence of regulation by government authority." See *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees* (1992), 64 Ohio St.3d 385, 388, 596 N.E.2d 423, 426. The appellees have not satisfied their burden of proof on these three factors and therefore are not public utilities. *Id.* at syllabus.

The wireless communications business is extremely competitive, and more so every day. See *In re Comm. Investigation Into Implementation of R.C. 4927.010 Through 4927.05* (Oct. 22, 1993), PUCO No. 89–563–TP–COI, unreported, at 1 (cellular market is competitive, warranting relaxed regulation). This competitiveness, and the concomitant lack of a monopolistic entity, militates against a "public utility" label because issues that would be regulated by PUCO can be resolved in the marketplace.

The good-or-service-provided factor is generally discussed in terms of the essentiality of the good or service. See *A & B Refuse,* 64 Ohio St.3d at 387, 596 N.E.2d at 425. Wireless communications services are convenient and useful, and have been especially beneficial to businesses. However, they are scarcely more essential than champagne and caviar.

The presence of government regulation is an especially thin reed on which to base the majority's conclusion because wireless communications and communications in general are being increasingly deregulated to promote competition. *Philadelphia v. Pennsylvania Pub. Util. Comm.* (Pa.1997), 702 A.2d 1139, 1141; *Wisconsin Pub. Serv. Comm. v. Wisconsin Bell, Inc.* (1997), 211 Wis.2d 751, 759, 566 N.W.2d 496, 500, fn. 4; *In re Procedure & Format for Filing Tariffs Under*

*Michigan Telecommunications Act* (1995), 210 Mich.App. 533, 536, 534 N.W.2d 194, 197.

The majority states that "[i]f telecommunications providers are never public utilities, there would be no need to enact this division [R.C. 519.211(B) ] subjecting certain telecommunications towers to township zoning restrictions." I agree. However, that does not mean that telecommunications providers are always public utilities. Some wireless telecommunications providers are public utilities and some are not. Therefore, R.C. 519.211(B) is necessary given the apparent goal of the General Assembly. When a wireless provider does not establish itself as a public utility, R.C. 519.211 has no effect. When a wireless provider establishes itself as a public utility, it is exempt from zoning regulations unless all the elements of R.C. 519.211(B) are met. In this case, the appellees did not establish that they are public utilities; therefore, R.C. 519.211 should have no effect.

Most corporate entities seek to avoid the label "public utility." It is interesting to see Ameritech and AT&T endeavor so mightily to be designated as public utilities.

I dissent.