**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 549.]**

SYMMES TOWNSHIP BOARD OF TRUSTEES, APPELLANT, *v.* SMYTH; AT&T
WIRELESS PCS, INC. ET AL., APPELLEES.

**[Cite as *Symmes Twp. Bd. of Trustees v. Smyth*, 2000-Ohio-470.]**

*Townships—Zoning—Telecommunications towers—Site zoned "E Retail
Business District" is not "an area zoned for residential use" subject to
township zoning regulation of telecommunications towers under R.C.
519.211(B)(1)(c), even though some residential uses are permitted in that
business district.*

A site zoned "E Retail Business District" is not "an area zoned for residential use"
subject to township zoning regulation of telecommunications towers under
R.C. 519.211(B)(1)(c), even though some residential uses are permitted in
that business district.

(No. 98-2479—Submitted October 20, 1999—Decided January 19, 2000.)

CERTIFIED by the Court of Appeals for Hamilton County, No. C-971028.

————————————

{¶ 1} This case asks whether a township may regulate the construction of a
telecommunications tower built by a public utility on property zoned "E Retail
Business District" when R.C. 519.211(B) grants townships the limited power to
regulate only those towers proposed for construction in "an area zoned for
residential use." The dispute arose in the fall of 1996, when AT&T Wireless PCS
and SBA, Inc. (hereinafter referred to collectively as "AT&T") wanted to build a
monopole telecommunications tower in Symmes Township on a site zoned "E
Retail Business District." The township zoning resolution permits some residential
uses in this zoning district, but the property at issue here is occupied by an auto
service shop and is nearly surrounded by other commercial uses such as
convenience stores and filling stations.

**{¶ 2}** AT&T requested and received a "public utility exemption letter" from the Hamilton County Rural Zoning Commission in late October 1996, and construction began in February 1997. In April 1997, however, when AT&T's contractors had finished building the tower, Symmes Township filed a complaint and moved for a restraining order against AT&T, the property owner, and his lessee.[1] The township argued that because the tower was located in an area where the zoning classification *permitted* some residential uses, and because R.C. 519.211(B)(1)(c) allows townships to regulate the construction of towers in "an area zoned for residential use," AT&T had circumvented the procedural safeguards of the Revised Code and township zoning resolution by commencing construction without notice to the township trustees or contiguous property owners. The trial court disagreed, denied the township's motion for a restraining order, and granted summary judgment in favor of AT&T. Interpreting the key phrase of R.C. 519.211(B)(1)(c), the trial court determined that the legislature intended that townships have the power to regulate telecommunications towers only when proposed for construction in a "truly residential" area.

**{¶ 3}** The township appealed this judgment to the Hamilton County Court of Appeals, raising two assignments of error. The township claimed that the trial court erred when it found that R.C. 519.211(B)(1)(c) prevented it from regulating telecommunications towers in areas which, though not *zoned* residential, *permit* some residential *uses*. The township also claimed that the trial court disregarded the issue of whether AT&T was indeed a public utility.

**{¶ 4}** The court of appeals overruled these assignments of error and affirmed the trial court's judgment in favor of the defendants. The court of appeals held that AT&T was a public utility under this court's decision in *Campanelli v. AT&T Wireless Services, Inc.* (1999), 85 Ohio St.3d 103, 706 N.E.2d 1267, because

---

1. The township eventually dismissed the lessee, Sam Smyth, without prejudice. Smyth's name remains in the caption of the court of appeals' judgment.

AT&T provided telephone services to the general public—a matter of public concern—under an FCC license and a PUCO certificate of public convenience and necessity. The court of appeals also agreed with the trial court that R.C. 519.211 did not grant the township the broader power to regulate public utilities concerning the location and construction of telecommunications towers in any area that *permits* residences, but rather the more limited power to regulate only in areas "zoned residential." The court of appeals certified a conflict between its decision on this issue of statutory interpretation and a contrary decision rendered by the Greene County Court of Appeals in *AT&T Wireless PCS, Inc. v. Beavercreek Twp. Bd. of Zoning Appeals* (Oct. 9, 1998), Greene App. No. 98-CA-18, unreported, 1998 WL 698374.

**{¶ 5}** This court agreed that a conflict exists, and instructed the parties to brief the certified issue of whether the language "in an area zoned for residential use," as used in R.C. 511.211(B)(1)(c), means an area zoned as a residential district primarily for residential use or an area that, regardless of its zoning designation, permits residences within its boundaries. This case and the conflicting case from Greene County were separately briefed and argued before this court and submitted for decision on October 20, 1999.

**{¶ 6}** The cause is now before this court upon our determination that a conflict exists.

---

*Robert P. Malloy,* Symmes Township Law Director; *Wood & Lamping, L.L.P.,* and *W. Kelly Lundrigan*, for appellant.

*Keating, Muething & Klekamp, P.L.L., Douglas L. Hensley* and *Dwight A. Packard II,* for appellee Henry W. Schneider.

*Barrett & Weber, C. Francis Barrett* and *M. Michele Fleming*, for appellees AT&T Wireless PCS, Inc., and SBA, Inc.

*Jones, Day, Reavis & Pogue* and *Randall A. Cole,* urging affirmance for

*amicus curiae*, Nextel Communications, Inc.

_____

**COOK, J.**

{¶ 7} As a general rule, Ohio law provides that townships have no power under the zoning laws to regulate the location, erection, or construction of any buildings or structures of any public utility. R.C. 519.211(A). There is a limited exception to this rule that applies to certain telecommunications towers that are to be located "in an area zoned for residential use." R.C. 519.211(B)(1)(c). Symmes Township, the appellant here, invites us to interpret this exception expansively in order to permit township regulation of telecommunications towers that are proposed for any zoning district where any residential uses are permitted. Because we believe that the township's interpretation is contrary to the language, structure, and purpose of Ohio's zoning laws, we affirm the judgment of the court of appeals.

{¶ 8} The zoning authority possessed by townships in the state of Ohio is limited to those powers specifically conferred by the General Assembly. *Yorkavitz v. Columbia Twp. Bd. of Trustees* (1957), 166 Ohio St. 349, 2 O.O.2d 255, 142 N.E.2d 655. Though R.C. Chapter 519 confers some zoning powers on township trustees, the General Assembly also expressly limits the power of townships to regulate the construction of telecommunications towers by public utilities. R.C. 519.211(A). This general rule exempting public utilities from the zoning power when erecting such towers reads: "Except as otherwise provided in division (B) or (C) of this section, sections 519.02 to 519.25 of the Revised Code *confer no power* on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility * * * for the operation of its business." (Emphasis added.) R.C. 519.211(A).

{¶ 9} This court has held that wireless telephone, radio, and paging providers are exempt public utilities for purposes of the exemption from township

zoning power. See *Campanelli v. AT&T Wireless Services, Inc.* (1999), 85 Ohio St.3d 103, 107, 706 N.E.2d 1267, 1270; see, also, *Marano v. Gibbs* (1989), 45 Ohio St.3d 310, 544 N.E.2d 635. Though R.C. 519.211 has been amended by the General Assembly three times since AT&T decided to build the tower that concerns us here, all versions have preserved the general rule exempting public utilities from township zoning regulation.[2]

**{¶ 10}** The limited exception to the general rule exempting public utilities from township zoning regulation, found in R.C. 519.211(B), contains the precise language at issue in this case. R.C. 519.211(B) *does* permit townships to regulate certain telecommunications structures, but only if, among other things, "[t]he free-standing or attached structure is proposed to be located in an unincorporated area of a township, in *an area zoned for residential use*." (Emphasis added.) R.C. 519.211(B)(1)(c).

**{¶ 11}** Symmes Township wants this court to apply the R.C. 519.211(B) exception in this case and hold that a district zoned "E Retail Business" constitutes "an area zoned for residential use" because some residential uses are permitted in the business district. Though we find that the statutory phrase "an area zoned for residential use" is ambiguous, we agree with the majority of courts that have determined that the language, structure, and purpose of the zoning laws require an interpretation limiting township regulation of telecommunications towers to those towers proposed to be located in primarily residential districts with a "residential" zoning classification.

The Ambiguity of R.C. 519.211(B)(1)(c)

---

2. The first amendment to R.C. 519.211 was effective October 31, 1996, just after AT&T received a public utility exemption letter. Am.Sub.H.B. No. 291, 146 Ohio Laws, Part II, 3676, 3679. The second amendment was effective March 31, 1997, just prior to the filing of the township's complaint. 1997 Am.Sub.H.B. No. 210. The most recent amendment was effective September 30, 1998, just before the court of appeals rendered its opinion in this case. 1998 Am.Sub.S.B. No. 132. None of these amendments substantively changed the general exemption rule or the language in R.C. 519.211(B)(1)(c) at issue in this case.

**{¶ 12}** When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation. *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161, citing *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. "Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent." *Meeks*, *supra*, 62 Ohio St.2d at 190, 16 O.O.3d at 214, 404 N.E.2d at 162.

**{¶ 13}** Though the court of appeals held that the questioned phrase was unambiguous, we discern that the phrase from R.C. 519.211(B)(1)(c) can be interpreted in at least two ways. The phrase "an area zoned for residential use" could describe, as most Ohio courts have found, a *residential* area with a *residential* zoning classification. See, *e.g.*, *Symmes Twp. Bd. of Trustees v. Smyth* (Nov. 6, 1998), Hamilton App. No. C-971028, unreported, 1998 WL 769725; *Watson v. Centel Cellular* (July 2, 1992), Licking C.P. No. 92-CV-00289, unreported; *Schroeder v. Rofkar* (June 23, 1992), Ottawa C.P. No. 92-CVE-137, unreported. And, since most zoning districts permit various *uses* regardless of their title, the phrase "an area zoned for residential use" could also be interpreted to include those zoning districts—regardless of title or primary use—where residential uses are *permitted*, as the Second District Court of Appeals concluded in the conflicting case. *AT&T Wireless PCS, Inc. v. Beavercreek Twp. Bd. of Zoning Appeals* (Oct. 9, 1998), Greene App. No. 98-CA-18, unreported, 1998 WL 698374. The conflict among the appellate courts regarding the meaning of the phrase strongly suggests that the statutory language is ambiguous. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96-97, 573 N.E.2d 77, 80.

**{¶ 14}** This court, in dicta, has already selected the interpretation of the statute that is favored by the majority of Ohio courts and the appellee here. In

*Campanelli v. AT&T Wireless*, *supra*, Chief Justice Moyer made the following statement regarding the applicability of R.C. 519.211(B): "[T]he record indicates that the telecommunications tower proposed by AT&T in this case does not meet all the guidelines set forth in division (B). Specifically, the proposed tower is not to be erected in 'an area zoned for residential use' as required under division (B)(1)(c). Instead, the tower is to be built in an area zoned B-2 General Business. Therefore, *construction of this tower cannot be regulated by the township zoning board pursuant to R.C. 519.211(B)*." (Emphasis added.) *Id.,* 85 Ohio St.3d at 105, 706 N.E.2d at 1269. Though the interpretive issue that we face here was not squarely before the court in *Campanelli*, Chief Justice Moyer determined that an area with a business zoning classification is not what is meant by the phrase "an area zoned for residential use." *Id.*

{¶ 15} To aid us in the interpretation of R.C. 519.211(B)(1)(c), we apply two rules of interpretation provided by the General Assembly. In Part A, below, we interpret the statutory phrase according to the common and technical usage of the words therein. R.C. 1.42. In Part B, below, we determine the intent of the legislature by considering the object sought to be attained, laws upon the same or similar subjects, and the consequences of the interpretations proposed by the parties. R.C. 1.49.

Part A: R.C. 1.42—Context and Common Usage

{¶ 16} The General Assembly directs courts to read statutory words and phrases in context and construe them according to the rules of grammar and common usage. R.C. 1.42. We begin, therefore, by examining the context in which R.C. 519.211(B) is found. In the context of the township zoning laws, R.C. 519.211(B) constitutes a carefully delimited exception to the general rule in R.C. 519.211(A) that exempts a public utility from township zoning regulations when it erects, alters, or maintains any structures used in the operation of its business. See *GTE Wireless of Midwest, Inc. v. Anderson Twp.* (June 17, 1999), Franklin App.

Nos. 98AP-855 and 98AP-856, unreported, 1999 WL 394943. Appearing as it does immediately after the broadly worded prohibition of township regulation of public utilities in R.C. 519.211(A), therefore, R.C. 519.211(B)(1)(c) represents an *exceptional* restraint on the use, management, or alienation of private property and should not be extended to include limitations not clearly described therein. See *State ex rel. Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 411, 124 N.E. 232, 233. Thus, our interpretation allows township regulation of telecommunications to remain the *exception* rather than the *rule* as contemplated by the statutory scheme.

{¶ 17} We also believe that the phrase "an area zoned for residential use" commonly connotes an area specifically *set aside* for homes and other residences because common definitions of the verb "to zone" include "to mark off," or "to partition * * * by ordinance into zones or sections reserved for different purposes." Webster's Third New International Dictionary (1986) 2660. Thus the phrase "an area zoned for residential use" would commonly describe an area "marked off" or "set aside" for residential—as opposed to commercial, business, agricultural, or industrial—uses.

{¶ 18} Symmes Township would have us equate the phrase "zoned for residential use" with the phrase "in which residential use is permitted." But in common parlance, these are different concepts. There is a substantial difference, after all, between a parking space set aside for, or designated for, handicapped persons and a parking space in which handicapped persons are permitted to park. The same distinction appears in zoning when municipalities and townships restrict or set aside areas primarily or solely for residential use, while other districts are left open for commercial development or other uses. See *Criterion Serv., Inc. v. E. Cleveland* (App.1949), 55 Ohio Law Abs. 90, 93, 88 N.E.2d 300, 302 ("[t]he purpose of a zoning ordinance is * * * [i]n other words, to separate residential districts from commercial districts and to separate both of these from property zoned for industrial use"). As a matter of context and common usage, therefore,

8

we adopt the narrower interpretation of R.C. 519.211(B)(1)(c) advanced by the appellees.

{¶ 19} R.C. 1.42 also instructs the court to determine whether the phrase "zoned for residential use" has acquired a technical or particular meaning that would assist us in resolving the ambiguity at hand. Since the Standard State Zoning Enabling Act of 1922[3] facilitated local division of land into districts regulated by use, the law of zoning has developed a unique vocabulary of "uses," "districts," "parcels," "variances," "cumulative zoning," "comprehensive plans," "PUDs," and other specialized terms. For this reason, any specialized usage of the phrase "area zoned for residential use" by practitioners in the zoning field would be an additional factor for the court to consider in this case.

{¶ 20} AT&T offered evidence that the meaning assigned the phrase "area zoned for residential use" by practitioners in the zoning field mirrors the common usage of these terms—that is, the phrase means a *residential* district with a residential zoning classification. AT&T cited opinions from the Hamilton County Zoning Administrator and the Hamilton County Prosecuting Attorney, whose offices assisted in the enforcement of the township zoning resolution. These opinions support AT&T's view that the phrase "area zoned for residential use" means zoning districts where the *primary permissible use* is residential.

{¶ 21} The Symmes Township Zoning Resolution itself, presumably drafted by practitioners with more than a passing knowledge of zoning terms, distinguishes between a group of eight "Residence Districts" and a dozen other districts with other assorted designations. Zoning Resolution for the Unincorporated Territory of Symmes Township, Hamilton County, Ohio, Article IV, Section 41. Those who drafted the resolution thus preserved a distinction between "residential zones" and nonresidential zones simply by the method they

---

3. A model Act drafted and distributed by the United States Department of Commerce. See 1 Anderson, American Law of Zoning (3 Ed.1986), Section 2.21.

used to assign titles to the many zoning districts in the township. An exception is the "Mobile Home Park District" classification, but, because mobile homes are simply mobile residences, we have no difficulty grouping the Mobile Home Park District with the residence districts and thereby distinguishing it from the township's office, industrial, and business classifications. If the phrase "zoned for residential use" has acquired a technical gloss in the world of township zoning, then that gloss only reflects the common and contextual usage described above.

Part B: R.C. 1.49 — Determining the Intention of the Legislature

{¶ 22} In R.C. 1.49, the General Assembly provides additional specific guideposts for courts to follow when interpreting ambiguous statutes. These include an examination of the object sought to be attained by the statute, laws upon the same or similar subjects, and the consequences of a particular construction.

{¶ 23} In our view, the object sought to be attained by the general exemption in R.C. 519.211(A) is public access to public utilities, largely unimpeded by the requirements of township zoning. See *Campanelli, supra,* 85 Ohio St.3d at 107, 706 N.E.2d at 1270. In *Marano v. Gibbs*, this court noted that the essence of a public utility derives from its devotion to making its services available to the general public and doing so indiscriminately. 45 Ohio St.3d at 311, 544 N.E.2d at 637. R.C. 519.211(A)'s exemption ensures that public utilities will be able to construct the facilities required to serve the public interest across the state without undue interference from township zoning resolutions. In enacting R.C. 519.211(B), therefore, the General Assembly provided only a "limited number of circumstances in which township zoning boards may regulate the construction of telecommunications towers." *Campanelli*, *supra*, 85 Ohio St.3d at 105, 706 N.E.2d at 1269. The object sought to be attained by the General Assembly would, thus, be undercut by the appellants' interpretation of R.C. 519.211(B)(1)(c), since it would permit the township to regulate towers in virtually every zoning district within its borders. Other townships with "cumulative" zoning schemes, in which some

10

residential uses are permitted in nearly every zone, could exercise the same regulatory powers, thereby inhibiting the availability of this utility's service to the general public.

{¶ 24} R.C. 1.49 also directs courts to examine the common law or former statutory provisions, including laws upon the same or similar subject, to assist in the interpretation of ambiguous statutory phrases. Our research confirms that when courts refer to an "area zoned for [insert type of] use," they refer to a district with a *primary* use or designation of the type indicated in the phrase. See, *e.g.*, *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 204, 667 N.E.2d 8, 10 (properties "zoned for commercial use" were properties of an urban character with office buildings and parking areas); *G.S.T. v. Avon Lake* (1976), 48 Ohio St.2d 63, 63, 2 O.O.3d 217, 217, 357 N.E.2d 38, 39 (distinguishing in the facts between property "zoned for residential use" and property "zoned for commercial use").

{¶ 25} The evolution of R.C. 519.211(B) itself demonstrates the legislative intent that the phrase "zoned for residential use" permits township regulation only in areas classified for primarily residential use. When the General Assembly amended R.C. 519.211 in 1996 and 1997, it retained without change the language "zoned for residential use," which had been interpreted by two courts as we interpret it here. See *Watson v. Centel Cellular* (July 2, 1992), Licking C.P. No. 92-CV-00289, unreported; *Schroeder v. Rofkar* (June 23, 1992), Ottawa C.P. No. 92-CVE-137, unreported. The General Assembly's choice not to change or define the phrase during the amendment process, in the face of these interpretations, supports the interpretation of the language advanced by AT&T. See *State ex rel. Huron Cty. Bd. of Edn. v. Howard* (1957), 167 Ohio St. 93, 95-96, 4 O.O.2d 83, 84, 146 N.E.2d 604, 606-607.

{¶ 26} The reference to "residential structures" in R.C. 519.211(B)(1)(d)(i), added to the statutory scheme in 1996, reinforces our conclusion that R.C. 519.211(B)(1)(c)'s reference to an "area zoned for residential use" was meant to

apply to primarily residential zones. For a township to regulate freestanding towers, not only must they be proposed for "an area zoned for residential use" under R.C. 519.211(B)(1)(c), they must also be proposed to be taller than either "the maximum allowable height of residential structures within the zoned area" or than other freestanding communications towers that were permitted by zoning regulations in effect before October 31, 1996. R.C. 519.211(B)(1)(d)(i). Since the height of the towers is to be measured against "residential structures" to trigger township zoning authority, we conclude that R.C. 519.211(B)(1)(c) also refers to "residential zones." We agree with the court of appeals that "[i]t would be nonsensical to measure the height of a tower in relation to residences if an area was zoned for other than residential use."

{¶ 27} Finally, R.C. 1.49 directs courts to examine the consequences of a particular interpretation of statutory language. The consequences of the township's suggested interpretation would be to obviate the general prohibition of township regulation of telecommunications towers. AT&T's interpretation, on the other hand, permits local control of telecommunications towers in residential zones, while preserving R.C. 519.211(A)'s general prohibition of township regulation.

{¶ 28} The practical consequences of the township's interpretation in the present case bear mentioning as well. If we accept the township's interpretation of R.C. 519.211(B), AT&T will be subject to township zoning for a tower built behind an automobile service shop between two commercial billboards, on a triangular plot of land with a business zoning classification, located in a busy intersection surrounded on nearly every side by office and business zones. In our view, such a consequence would be absurd when the General Assembly has restricted township zoning to "an area zoned for residential use." We therefore construe the statute to avoid such an unreasonable or absurd consequence. See *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 18 OBR 437, 439, 481 N.E.2d 632, 634.

**{¶ 29}** In order for wireless service providers to maintain their status as public utilities, they must provide their wireless services to the general public. *Campanelli*, *Marano*, *supra*. In R.C. 519.211(A) and (B), the General Assembly has made a policy decision to permit these utilities to do so without regulatory interference from township zoning, unless the construction is proposed for a residential area. We defer to the policy decision by the legislature and construe the language that it enacted accordingly.

**{¶ 30}** For the foregoing reasons, we hold that a site zoned "E Retail Business District" is not "an area zoned for residential use" subject to township zoning regulation of telecommunications towers under R.C. 519.211(B)(1)(c), even though some residential uses are permitted in that business district. The language "an area zoned for residential use" means an area zoned as a residential district, an area with a residential zoning classification under the township's zoning resolution, or an area zoned primarily for residential use.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, O'DONNELL, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., concurs in judgment only.

TERRENCE O'DONNELL, J., of the Eighth Appellate District, sitting for RESNICK, J.

_____