DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court judgment, upon a bench trial, in favor of the Washington Township Trustees (Trustees), plaintiffs below and appellees herein. The court enjoined Kenneth E. Davis, Citicasters Co., and Clear Channel Communications, Inc., defendants below and appellants herein, from any further telecommunications towers construction and ordered the removal of existing structures. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT HELD THAT DEFENDANT-APPELLANT CITICASTERS CO. WAS NOT A PUBLIC UTILITY FOR THE PURPOSES OF THE ZONING RESOLUTION OF WASHINGTON TOWNSHIP, PICKAWAY COUNTY, OHIO."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT HELD THAT THE ZONING RESOLUTION OF WASHINGTON TOWNSHIP, PICKAWAY COUNTY, OHIO REGULATED THE LOCATION, ERECTION, CONSTRUCTION, RECONSTRUCTION, CHANGE, ALTERATION, REMOVAL OR ENLARGEMENT OF TELECOMMUNICATIONS TOWERS."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS WHEN IT RENDERED A JUDGMENT FOR PLAINTIFFS-APPELLEES WHICH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant, Citicasters Co. (Citicasters) holds a Federal Communications Commission (FCC) license to operate AM radio station WTVN in Columbus at 610 Khz. WTVN sends its signal from its Columbus studios by microwave to its transmission tower in Obetz. WTVN's signal is then broadcast from its Obetz transmission tower to the radio station's coverage area. The current tower is nearly fifty (50) years old and covers approximately sixty-four percent (64%) of Franklin County. The tower does not reach any surrounding areas including Lancaster, Newark or Marysville. Citicasters sought to correct this deficiency and upgraded its broadcast facilities. On February 12, 1998, the company agreed to acquire 228 acres of land from appellant, Kenneth Davis, and his wife, for $801,139. Citicasters purchased this property, located along Route 56 in Washington Township, roughly four (4) miles southeast of Circleville, and intended to build eight (8) new transmission towers which would considerably boost the reach of WTVN's radio signal.
The company began construction of these new towers but, on December 21, 1999, the Washington Township Trustees commenced the instant action. The Trustees alleged that the land in question was zoned as a Farm Residential District (FR-1) and that the telecommunications towers did not conform to the local zoning laws. The Trustees asked the court,inter alia, to permanently enjoin appellant's from any further construction and that they be ordered to remove all existing structures in violation of the zoning ordinance.[1]
Appellants filed a joint answer. Although appellants admitted that the property was "physically located" within an FR-1 district, they denied the allegation regarding a zoning violation. Rather, appellants asserted that Citicasters is a "public utility" and, therefore, exempted from compliance with the Washington Township Zoning laws. Appellants thus concluded that the complaint against them should be dismissed.
On January 24, 2000, the trial court conducted a hearing. At the hearing both sides stipulated to the essential facts in this case and presented the matter to the court solely on the issue of whether Citicasters is a public utility and, thus, exempt from pertinent zoning regulations. To that end, Michael McGregor, an associate professor of telecommunications at Indiana University, testified that a "radio broadcaster" is a business vested by law "with the public interest." Professor McGregor explained that the whole FCC regime, set up by the United States Congress to regulate broadcasting, is infused with the basic principle that broadcasters "serve the public interest, convenience and necessity." The witness further opined that broadcasting is a "matter of public concern" because it is one of the greater sources of information to citizens of this country. Appellants then argued that a "public utility," for purposes of pertinent zoning regulations, is a business vested by law with the public interest and that, given Professor McGregor's testimony, WTVN radio fell within that rubric and should be exempt from zoning regulations.
The trial court took the matter under advisement and, on March 21, 2000, filed a decision and judgment entry ruling in favor of the Trustees. The court determined that the radio station is not a "public utility" for purposes of the Washington Township Zoning regulations. The court reasoned that although the station may serve a "public interest," the station is not a matter of "public concern." Indeed, the court noted that "[t]he nature of its operations and the quality of regulations governing 610 WTVN do not parallel those of businesses that are ordinarily accepted as public utilities." The court further noted that even if the radio station could be deemed a public utility, the Trustees still had authority under R.C. 519.211 to prohibit construction of Citicasters's telecommunications towers. Thus, the trial court permanently enjoined appellants from any further construction of those towers and ordered appellants to remove all existing structures in violation of the Washington Township Zoning regulations within thirty (30) days.[2] This appeal followed.[3]
Our analysis begins with the provisions of R.C. Chapter 519, which gives authority to township trustees to regulate zoning in unincorporated township territories. Townships have no power under zoning laws, however, to regulate the location, erection or construction of any buildings or other structures of a "public utility." R.C. 519.211(A);also see Symmes Twp. Bd. Of Trustees v. Smyth (2000), 87 Ohio St.3d 549,551, 721 N.E.2d 1057, 1060. This restriction is also reflected in Section 6.03 of the Washington Township Zoning Resolution:
 "Nothing contained in this Resolution shall prevent the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use or enlargement of any building or structure of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad for the operation of its business." (Emphasis added.)
Appellants admitted below, and they concede on appeal, that the Davis property is zoned "farm residential" and that the radio towers are an inappropriate use for that district. Appellants have argued throughout these proceedings, however, that Citicasters is a "public utility" and, thus, exempt from Washington Township Zoning under both R.C. 519.211(A) and the township zoning regulations.
We note that the term "public utility" is not defined in either the statute or the resolution. The question of whether Citicasters is a "public utility" under these provisions has become the focal point of dispute in this case. The trial court, in a lengthy and detailed opinion, concluded that Citicasters is not a public utility and, hence, exempt from zoning. Appellants argue in their first and third assignments of error, which we consider together, that the trial court's judgment is erroneous as a matter of law and is against the manifest weight of the evidence. For the following reasons, we disagree with appellants arguments and we adopt the trial court's well reasoned opinion and rationale.
The question of whether a concern is a public utility is a mixed question of law and fact. Coventry Twp. V. Ecker (1995),101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1328; Montville Bd. Of Twp.Trustees v. WDBN, Inc. (1983), 10 Ohio App.3d 284, 286, 461 N.E.2d 1345,1348. This Court will not reverse a trial court's factual determinations when those determinations are supported by some competent and credible evidence, see Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10,722 N.E.2d 1018, 1022; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96,566 N.E.2d 154, 159; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus, but we will apply ade novo standard of review to a trial court's application of the law to those facts. See Soler v. Evans (Sep. 26, 2000), Franklin App. No. 99AP-1020, unreported; Friend v. Elsea, Inc. (Sep. 26, 2000), Pickaway App. No. 98CA29, unreported; Pierce v. Vanbibber (Jun. 30, 2000), Scioto App. No. 99CA2639, unreported. With this concept in mind, we turn our attention to the rather nebulous question of what constitutes a "public utility."
As mentioned previously, neither the pertinent state statute nor the Township Zoning Resolution contain a definition of the term "public utility." Furthermore, we find no definitive test or standard appearing in case law to apply in these situations. Rather, as the Ohio Supreme Court has noted, "[t]he determination of whether a particular entity is a public utility for the purpose of exemption from local zoning restrictions requires a consideration of several factors related to the `public service' and `public concern' characteristics of a public utility." A BRefuse Disposers, Inc. v. Ravenna Twp. Bd. Of Trustees (1992),64 Ohio St.3d 385, 596 N.E.2d 423, at the syllabus. The Ohio Supreme Court explained as follows:
 "[P]ublic utilities possess certain common attributes or characteristics which courts employ in determining the nature of an entity's operations. The main and frequently most important attribute of a public utility is a devotion of an essential good or service to the general public which has a legal right to demand or receive this good or service. The fact that a private business provides a good or service associated with the usual subject matter of a public utility does not give rise to a presumption that it is devoted to public service. Rather, in order to qualify as a public utility, the entity must in fact, provide its good or service to the public indiscriminately and reasonably. Further, this attribute requires an obligation to provide the good or service which cannot be arbitrarily or unreasonably withdrawn.
 The second characteristic of a public utility most often addressed by courts is whether the entity, public or private, conducts its operations in such a manner as to be a matter of public concern. Normally, a public utility occupies a monopolistic or ogopolisitic [sic] position in the marketplace. This position gives rise to a public concern for the indiscriminate treatment of that portion of the public which needs and pays for the vital good or service offered by the entity. Factors utilized in determining whether an enterprise conducts itself in such a way as to become a matter of public concern include the good or service provided, competition in the local marketplace, and regulation by governmental authority." (Citations and footnotes omitted.) Id. at 387-388, 596 N.E.2d at 425-426.
The Court held in A B Refuse that a collector of solid waste is not a "public utility" for purposes of R.C. 519.211 and that a proposed landfill is not exempt from local zoning regulation compliance. In reaching that conclusion, the Court held that no evidence existed to show (1) that the landfill provided its services to local residents "indiscriminately and reasonably," (2) that a substantial part of the residents availed themselves of the landfill, or (3) that such services are a necessity to local residents. Id. at 390, 596 N.E.2d at 427. We find similar deficiencies in the cause sub judice.
In the case sub judice, there is no question that the 610 WTVN radio signal is provided "indiscriminately and reasonably." Indeed, anyone with a functioning radio can receive that signal. The problem, however, centers on the other elements of a typical public utility. First, as in the A B Refuse case, we find no evidence that a substantial number of residents in the radio's coverage area avail themselves of the station's signal. John Potter, General Manager of WTVN and Vice President of Citicasters, testified that the station has a potential listening audience of "[a] quarter of a million people." He explained, however, that this "doesn't mean necessarily the people listen, but technically they can listen." We have no way of knowing, and perhaps there is no accurate method to determine, the precise number of WTVN listeners or whether those listeners constitute a "substantial part" of the residents in the coverage area.
Another problem is the question of whether the radio station is providing an "essential good or service" which is a "necessity" for the general public. Professor McGregor testified that radio broadcasters must serve "the public interest, convenience and necessity" and that broadcasting is a matter of public concern because it "is one of the greatest sources of information to citizens in the United States." Of course, the trial court is not required to ipso facto accept that premise. See GTE North, Inc. v. Carr (1993), 84 Ohio App.3d 776, 780,618 N.E.2d 249, 251, at fn. 3. The weight to be given his testimony is an issue for the trier of fact, see Cole v. Complete Auto Transit, Inc.
(1997), 119 Ohio App.3d 771, 777-778, 696 N.E.2d 289, 293, and the court below was free to believe all, part or none of Professor McGregor's testimony. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438,439; Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42,623 N.E.2d 591, 596. Our review indicates that the trial court gave little weight to this particular portion of McGregor's testimony. The court found that although 610 WTVN radio serves the public interest, the radio station is not a matter of public concern. This was certainly within the trial court's province. Further, the trial court may have considered that while important, radio is not the sole source of information; there is also television, newspapers and, for some, the burgeoning internet. In short, we believe that the record sufficiently supports the trial court's finding that appellants did not carry their burden to demonstrate that they provide an essential or necessary good/service to the general public.
Our ruling is buttressed by several other factors, as well. First, a public utility has traditionally been described as a business organization that regularly sells to the public a commodity or service such as transportation, electricity, gas, water, or telephone service. See 64 American Jurisprudence 2d (1972) 549, Public Utilities, § 1; 73B Corpus Juris Secundum (1983) 127, Public Utilities, § 2. In the casesub judice, the business at issue is not selling anything to the public; rather, it is, in essence, giving that commodity away. The station's signal is broadcast to everyone and can be received free of charge by anyone with a functioning radio. This scenario does not fit the typical analytical framework for entities regarded as "public utilities." Because the service or commodity is free to everyone in the listening area, there is no need to regulate rates and charges or be concerned about the service being wrongfully or unreasonably withheld. As the trial court cogently noted, the FCC regulates radio stations to control the use of a limited radio spectrum and to ensure the operating area of each station from interference by other stations. The purpose of the FCC regulation is not to safeguard rates or to safeguard the right of citizens to use the product.
We also note that although few reported cases exist on this particular subject, our position is consistent with the majority of other jurisdictions that have considered this issue. See e.g. Mammina v. ZoningBd. Of Appeals (Sup.Ct. 1981), 442 N.Y.S.2d 689, 693 (radio station not a public utility as a matter of law); WANV, Inc. v. Huff (Va. 1978),244 S.E.2d 760, 762 (the term "utilities" as employed in local zoning ordinance includes those providing necessary and essential services to residential areas (e.g. electricity, water, gas, telephone sewage) and radio tower is not contemplated in the meaning of that term);Commonwealth Public Utility Commission v. WVCH Comm. Inc. (Pa.Cmwlth 1975), 351 A.2d 328, 330 (the fact that a radio station serves the public interest and is regulated to some extent by the FCC does not make it a public utility); McIntire v. Wm. Penn Broadcasting Co. (C.A.3 1945),151 F.2d 597, 601 (radio station is not a public utility in the general sense that it must permit broadcasting by whomever comes to its microphones); also see Sanders Bros. Radio Station v. FederalCommunications Commission (D.C.C.A. 1939), 106 F.2d 321, 324; PulitzerPub. Co. v. Federal Communications Commission (D.C.C.A. 1937), 94 F.2d 249,251 (federal courts have never held that radio broadcasting stations are public utilities).[4] For all these reasons, we agree with the trial court's conclusion that Citicasters is not a public utility for purposes of exemption from township zoning.
Appellants counter argue and cite Marano v. Gibbs (1989),45 Ohio St.3d 310, 544 N.E.2d 635, in which the Ohio Supreme Court held that companies providing two-way telephone services, mobile telephone services, voice paging and radio communications are public utilities, andCampanelli v. ATT Wireless Serv., Inc. (1999), 85 Ohio St.3d 103,706 N.E.2d 1267 in which the Court reached the same conclusion with respect to a telecommunications company providing cellular phone service, pagers and wireless modems for personal computers. Appellants assert that in view of the fact that the companies in these two cases were deemed to be "public utilities" and were permitted to build or maintain radio towers irrespective of local zoning ordinances, they too should enjoy that same classification and concomitant privilege of being exempt from local zoning laws. We are not persuaded.
The businesses at issue in the Marano and Campanelli cases are fundamentally different than the business at issue here. First, the products offered by those companies (i.e. telecommunications services) are sold to the general public in the ordinary course of their respective businesses. In the instant case, WTVN's radio signal broadcast is essentially distributed free to the general public and may be received by anyone in its listening area. The second distinction is that the type of businesses involved in Marano and Campanelli have a long history of public utility regulation. Chief Justice Moyer noted several times inCampanelli, supra at 106-107, 706 N.E.2d at 1269-1270, that the service provided by the company is "essentially" that of a "telephone service." The same can generally be said for the products offered in the Marano
case.[5] Telephone services, as mentioned previously, have always been regarded as public utilities. See 64 American Jurisprudence 2d, supra at 549, § 1; 73B Corpus Juris Secundum, supra at 127, § 2. By contrast, the product offered here is a one-way radio broadcast. There is no communicative aspect to the business of WTVN radio. Thus, we do not believe that the business at issue in the cause sub judice can be analogized to those businesses at issue in the Marano and Campanelli
cases.
Appellants also cite Collins v. Swackhamer (1991), 75 Ohio App.3d 831,600 N.E.2d 1079, wherein our Franklin County Court of Appeals colleagues affirmed a trial court ruling that a company seeking to build an FM radio tower is a public utility pursuant to Marano and is exempt from local zoning. We note, however, that the instant case differs from Collins in both procedure and substance. First, the court in Collins upheld the trial court's factual finding. We are doing the same thing in the casesub judice. The difference is that the trial court in this case, based upon the evidence presented below, reached the conclusion that the radio station is not a public utility. Although we believe that this decision is correct as a matter of law, we do not rule out the possibility that, under a different set of facts, either the trial court or this Court might have come to a different conclusion. Second, according to the Court's decision in Collins, supra at 833, 600 N.E.2d at 1080, the businesses making use of the radio tower provided their services "to the general public . . . at a cost." This is somewhat different than the radio station at issue here which is broadcasting their signal free of charge to the general public in its listening area.
However, to the extent that the Collins court held that an FM radio company operating a broadcast tower must be deemed a public utility under the Marano case as a matter of law, we must respectfully disagree with that decision. We find no precedent in Ohio for reaching that result and we do not believe that such outcome is mandated by either the Marano orCampanelli cases.
For these reasons, we find no error in the trial court's decision and we readily agree with its reasoning herein. Appellants' first and third assignments of error are accordingly overruled.
The second assignment of error addresses that portion of the trial court's decision which held that, even if Citicasters was a public utility, the Trustees would still be empowered to stop the construction of its radio tower. In view of our holding that the radio station is not a public utility for purposes of R.C. 519.211, this assignment of error is rendered moot and we decline to issue any advisory opinion on the matter. The second assignment of error is therefor disregarded pursuant to App.R. 12(A)(1)(c) and we affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ___________________________ Peter B. Abele, Presiding Judge
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] Mr. Davis and Citicasters were both named as defendants to the proceedings below, as were CT Corporation Systems and Clear Channel Communications, Inc. It appears that Citicasters is an affiliate of Clear Channel Communications, Inc. and the two (2) companies appeared jointly with Davis in the cause sub judice. The role of CT Corporation Systems in these proceedings is a little less clear from the record and, in any event, that company did not file an answer below.
[2] The trial court's order, which directed the removal of the existing structures, was stayed pending appeal to this Court.
[3] The provisions of App.R. 16(A)(7) require an appellant's brief to contain an argument with respect to each assignment of error. Appellants advance three (3) assignments of error in the cause sub judice, but present only a single argument. While that argument has five (5) sub-headings, none of them directly match the assignments of error. Thus, the design of appellants' appellate brief has unduly complicated appellants' argument.
[4] But see State ex rel. Pruzan v. Redman (Wa. 1962), 374 P.2d 1002,1006 wherein the Washington Supreme Court held that although a radio broadcasting station does not constitute a public utility in the ordinary sense of the term, the station is nevertheless a public utility in the limited sense that it is impressed with a public interest.
[5] We acknowledge that a paging system (like the one at issue in theMarano case) is not a two-way means of communication like a telephone system. Nevertheless, there is a communicative aspect to it in which one private citizen may "page" another. That quality does not apply to radio broadcasts.