[Cite as *Dovetail Energy, L.L.C. v. Bath Twp. Bd. of Zoning Appeals*, 2022-Ohio-92.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| DOVETAIL ENERGY, LLC, et al. | : | |
| | : | |
| Appellees | : | Appellate Case No. 2021-CA-15 |
| | : | |
| v. | : | Trial Court Case Nos. 2020-CV-198 |
| | : | 2020-CV-199 |
| BATH TOWNSHIP BOARD OF | : | 2020-CV-200 |
| ZONING APPEALS, et al. | : | |
| | : | (Civil Appeal from |
| Appellants | : | Common Pleas Court) |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 14th day of January, 2022.

. . . . . . . . . . .

CATHERINE ANN CUNNINGHAM, Atty. Reg. No. 0015730, 65 East State Street, Suite 1800, Columbus, Ohio 43215
and
N. TREVOR ALEXANDER, Atty. Reg. No. 0080713, 41 South High Street, Suite 2600, Columbus, Ohio 43215
        Attorneys for Appellees Dovetail Energy, LLC and Renergy, Inc.

JACK A. VAN KLEY, Atty. Reg. No. 0016961, 132 Northwoods Boulevard, Suite C-1, Columbus, Ohio 43235
        Attorney for Appellees Pitstick Renewable Energy, LLC, Thomas V. and D. Lynne Pitstick

L. MICHAEL BLY, Atty. Reg. No. 0042074 & MATTHEW S. HAUER, Atty. Reg. No. 0099596, 2700 Stratacache Tower, Dayton, Ohio 45423
        Attorneys for Appellants

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Appellants, the Bath Township Board of Zoning Appeals, Bath Township, and the Bath Township zoning inspector (collectively, the BZA), appeal from a judgment of the Greene County Court of Common Pleas which determined that the biodigester facility owned by Appellee, Dovetail Energy, LLC, was not subject to township zoning regulations because it was a public utility pursuant to R.C. 519.211(A). For the reasons that follow, the judgment of the trial court will be affirmed.

I. **Facts and Procedural History**

Dovetail's Facility

{¶ 2} Dovetail, a renewable energy company, owns and operates an anaerobic digestion facility in Bath Township. The operation, which processes solid waste materials and turns them into electric energy and fertilizer, is located on a parcel of land owned by Thomas and Lynne Pitstick and their corporate entity, Pitstick Renewable Energy, LLC. The parcel in question is surrounded by other Pitstick-owned land that is used for farming. The farming operations on the neighboring properties include a hog farm with a capacity of nearly 5,000 swine, a nursery, and cropland which grows corn, wheat, and soybeans on a rotating basis.

{¶ 3} While the process by which the biodigester works is a complex one, we think it can be distilled down to the following: the Pitstick hog farm provides Dovetail with millions of gallons of manure and other solid waste products, which are stored in giant, underground holding tanks. The waste is then processed by bacteria in the digester to produce methane gas, and Dovetail uses the methane to produce electrical energy. Once the methane is removed, Dovetail treats the remaining material, called "effluent," to turn

it into fertilizer, which is stored on the property until it is provided to farmers for crop production.

{¶ 4} A small portion of the electricity produced by the Dovetail biodigester is used to power the Pitstick farm and adjacent fields; the farm's sole source of electricity is the biodigester. Most of the electricity produced, however, is sold by Dovetail to the PJM regional wholesale electric grid. This regional transmission organization is responsible for powering 12 states ranging from Illinois in the west to New Jersey in the east. In addition to the agreement with PJM, Dovetail also has an interconnection agreement with Ohio Edison.

Procedural History

{¶ 5} In 2013, Bath Township issued a zoning certification of agricultural exemption for an anaerobic digestion facility to be built on the Pitstick property. The building process took time, but by 2015, Dovetail began operations. In 2016, Bath Township issued a second zoning certification of agricultural exemption for improvements to the biodigester. It does not appear that the agricultural exemptions have been formally revoked.

{¶ 6} Soon after the Dovetail facility was completed, Bath Township began to get complaints about the noxious odor coming from the property and the increase of traffic due to trucks hauling solid waste to and from the facility. According to the record, residents living a mile away from Dovetail were affected by the smell.

{¶ 7} On September 6, 2019, the Pitsticks were informed that the activity on their property appeared to be in violation of R.C. 519.21(C)(2), R.C. 5713.30(A)(b), and Bath Township zoning resolutions. The notice informed them that "[t]he property is zoned agricultural and the current use of the existing biodigester facility has been determined to

be an industrial use[.]" A similar violation notice was sent to Dovetail that same day. Both the Pitsticks and Dovetail filed appeals with the BZA. They argued that the property was exempt from zoning resolutions under R.C. 519.21(A) because the structures on the property were agricultural in nature, and that it was exempt pursuant to R.C. 519.211(A) because the property and buildings on it were used by a public utility for the generation of electric power.

{¶ 8} Dovetail was then informed on September 25, 2019, that Bath Township had rejected its proposal to build two new fertilizer storage ponds. The township reasoned that the ponds did not fall under the agricultural use exception. In its BZA appeal, Dovetail argued twofold: the property was being used for agricultural purposes and it was a public utility. It further asserted that the decision was an unconstitutional taking.

{¶ 9} The appeals from Dovetail and the Pisticks were consolidated into a single public hearing on February 13, 2020. The proceeding included several exhibits and testimony from John Bentine, an expert who testified on behalf of Dovetail. Bentine testified that the Dovetail facility should qualify as a public utility and be immune from Bath Township zoning. Bath Township called Jacob Barnes to testify that the land and facility in question should not be eligible for the agricultural exception. Barnes did not, however, form an opinion about whether the Dovetail facility was a public utility.   The BZA granted leave for the parties to file proposed findings of fact and closing arguments, and the parties submitted a document entitled "Joint Stipulated Findings of Fact" ("Stipulation") on February 24, 2020.

{¶ 10} Ultimately, the BZA affirmed the decisions of the Bath Township zoning authority "with respect to their determination regarding the current and proposed uses of

properties subject to the Appeals and affirms the appealed zoning decisions in their entirety." Specifically, the BZA determined that, notwithstanding the prior approvals, the land, in its current use, was not agricultural in nature. The BZA did not consider the issue of whether Dovetail was a public utility because it did not believe it held the authority to do so. It asserted that it had only been called upon to determine whether the existing use of the property constituted an agricultural use.

{¶ 11} Dovetail appealed the BZA's decision to the Greene County Court of Common Pleas pursuant to R.C. 2506.01. The trial court reversed, finding that the decision of the BZA was not supported by a preponderance of the evidence; that Dovetail's current and proposed land use and structures qualified as public utilities, making them exempt from Bath Township zoning; and that the agricultural exemption issue was moot. The trial court then remanded the cases back to the BZA to vacate the notices of violation and to grant Dovetail's request for a certificate of exemption.

{¶ 12} Bath Township has appeals, raising three assignments of error.

II.     **Remand to the BZA was not required**

{¶ 13} In its first assignment of error, Bath Township argues that the trial court erred by not remanding the case to the BZA to allow the Township to make arguments that the Dovetail facility was not a public utility. Dovetail, on the other hand, asserts that the trial court was not required to remand the matter for a hearing. Based on the plain language of the statute, we agree with Dovetail.

{¶ 14} When an appellate court reviews a decision by the common pleas court regarding an agency order, the appellate court utilizes two distinct standards of review. On a question of fact, our review is limited to an abuse of discretion. *Key Ads, Inc. v.*

*Dayton Bd. of Zoning Appeals*, 2014-Ohio-4961, 23 N.E.3d 266, ¶ 13 (2d Dist.). On a question of law, however, the review is de novo. *Id.*, citing *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh*, 129 Ohio App.3d 255, 261, 717 N.E.2d 763 (4th Dist.1998). In this case, since we are reviewing the interpretation of statutes, the proper standard of review is de novo. *See Dayton v. Johnson*, 2d Dist. Montgomery No. 29057, 2021-Ohio-3519, ¶ 25 ("The interpretation of a statute is a question of law, which we review de novo.").

{¶ 15} R.C. Chapter 2506 governs appeals to the common pleas court from administrative agencies, like the BZA. "If an appeal is taken in relation to a * * * decision [of the agency], * * * the court may find that the * * * decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with those findings, the court may affirm, reverse, vacate, or modify the * * * decision, or remand the cause to the [agency] with instructions[.]" R.C. 2506.04.

{¶ 16} The plain language of the statute gives the trial court options. If it finds the decision of the agency to be incorrect, the trial court can **either** reverse, vacate, or modify the decision on its own, **or** send the case back to the agency with further instructions. In this case, based on the information in the record before it, the trial court determined that the Dovetail facility was a public utility under R.C. 519.211 and that it did not need to remand the case to the BZA for further arguments. It simply reversed the decision of the BZA, as was its prerogative under R.C. 2506.04.

{¶ 17} Nevertheless, Bath Township asserts that the case should be remanded to the BZA for further arguments. It reasons that it was not given an opportunity to retain an

expert to refute the contention that Dovetail's facility was a public utility because the argument was presented for the first time at the BZA hearing. Bath Township's contention that it was caught off-guard at the BZA hearing by Dovetail's claim that its facility was a public utility is simply not borne out by the record. Dovetail, in its September 26, 2019 Notice of Appeal, argued that "[t]he property is exempt from the Resolution pursuant to R.C. 519.211(A), because the Property and the buildings and structures on the Property are used by a public utility for the generation of electricity." Notice of Appeal at 1. Bath Township *could* have retained an expert to refute the one Dovetail presented – it just did not.

{¶ 18} Bath Township also cites several cases to bolster its position that the trial court was "required to remand the matter to the BZA for a hearing on the public utility exemption issue." Appellants' Brief at 11. These cases, though, use language that confirms the trial court *may* remand to the agency for further proceedings, but is not required to do so.. For instance, *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs*, 96 Ohio St.3d 400, 2002-Ohio-4906, 775 N.E.2d 512, ¶ 8, verifies that "common pleas courts have authority in R.C. Chapter 2506 administrative appeals to remand for further proceedings, including a new hearing." There is no dispute that the trial court *can* remand; it just does not *have* to.

{¶ 19} We overrule Bath Township's first assignment of error and hold that R.C. 2506.04 permits a trial court hearing an appeal from a BZA decision to remand the case to the agency for further proceedings but does not require it.

### III. Dovetail's facility is a public utility

{¶ 20} In its second assignment of error, Bath Township argues that the trial court

erred in finding that Dovetail is exempt from township zoning regulations as a public utility under R.C. 519.211.

{¶ 21} There is no dispute that R.C. 519.211 restricts the zoning authority of townships over public utilities. The statute states:

Except as otherwise provided in division (B) or (C) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business.

R.C. 519.211(A). *See Campanelli v. AT&T Wireless Servs., Inc.*, 85 Ohio St.3d 103, 107, 706 N.E.2d 1267 (1999) (R.C. 519.211 "was intended to exempt public utilities providers from regulation by township zoning boards and boards of zoning appeals"). What qualifies as a "public utility," though, is not as clear, because the legislature did not define the term insofar as it relates to R.C. 519.211. Because of this, Ohio courts have had to flesh out the defining characteristics.

{¶ 22} The Ohio Supreme Court has held that "public utilities possess certain common attributes or characteristics which courts employ in determining the nature of an entity's operations. The * * * most important attribute of a public utility is a devotion of an essential good or service to the general public which has a legal right to demand or receive this good or service." *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees,* 64 Ohio St.3d 385, 389, 596 N.E.2d 423 (1992). Moreover, "an entity may be

characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public." *Marano v. Gibbs*, 45 Ohio St.3d 310, 311, 544 N.E.2d 635 (1989).

{¶ 23} The determination of whether an entity is a public utility for the purpose of exemption from zoning restrictions "requires consideration of several factors related to the 'public service' and 'public concern' characteristics of a public utility. It follows that a business claiming public utility status bears the burden of offering sufficient evidence on these factors[.]" *A & B Refuse Disposers* at 389. The determination is a mixed question of law and fact. *Id.* at 387.

Public Service

{¶ 24} An entity provides a public service if it (1) provides essential goods or services to the public which has a legal right to demand or receive them; (2) provides the goods or services to the public indiscriminately and reasonably; and (3) the obligation to provide the goods or services cannot be arbitrarily or unreasonably withdrawn. *Id; see also Westfield Twp. Zoning Inspector v. Emerald Bioenergy, LLC*, 5th Dist. Morrow No. 2021 CA 0001, 2021-Ohio-3843, ¶ 40. There can be little doubt that electricity is a good or service.

{¶ 25} The parties stipulated that Dovetail "takes biologically derived and treated fuel sources * * * and converts them into electricity * * * for consumption by the public." Stipulation, ¶ 37. It also "provides wholesale electrical generation services to the wholesale electric grid" by selling energy generated into the PJM wholesale energy market. Stipulation, ¶ 34. Dovetail's energy is used by PJM to provide energy to local utilities who serve customers, even those in Bath Township. Stipulation, ¶ 35. In fact, 81%

of the energy created by the biodigester is provided to the PJM wholesale market. Stipulation, ¶ 34. At full capacity, Dovetail can provide electricity to approximately 1,000 homes. Stipulation, ¶ 25.

**{¶ 26}** Bath Township also admits that Dovetail "indiscriminately provides renewable energy credits through its PUCO renewable energy resource certification," and its operations and PUCO certification "require it to provide renewable energy credits, which cannot be arbitrarily or unreasonably withdrawn." Stipulation, ¶ 53.

**{¶ 27}** Based on the stipulations of the parties and other facts in the record, Dovetail provides a public service. The trial court did not err in making that same determination.

<u>Public Concern</u>

**{¶ 28}** The other characteristic of a public utility that courts consider is whether the entity conducts its operations "in such a manner as to be a matter of public concern." *A & B Refuse Disposers* at 387. A public utility often occupies a monopolistic or oligopolistic position in the marketplace, and that "gives rise to a public concern for the indiscriminate treatment of that portion of the public which needs and pays for the vital good or service offered by the entity." *Id.* Factors used to determine whether an enterprise conducts itself in such a way to be a matter of public concern include competition in the marketplace; the good or service provided; and regulation by a government authority. *Id.* No single factor is controlling. "Nevertheless, in a case where the business enterprise serves such a substantial part of the public that its rates, charges and methods of operation become a public concern, it can be characterized as a public utility." *Id.*, citing *Indus. Gas Co. v. Pub. Utilities Comm. of Ohio*, 135 Ohio St. 408, 412, 21 N.E.2d 166 (1939).

{¶ 29} In its decision, the trial court found several ways in which Dovetail and the energy it produces are public concerns. First, the court found that the generation of renewable energy is a matter of public concern as demonstrated by the legislature's policy and its statutory enactments. Entry at 19-20. R.C. 4928.64(B)(1) states that by 2026, 8.5 percent of the total electricity distributed in the state to retail customers must come from "qualifying renewable energy resources." In addition, Ohio incentivizes small facilities, waste energy recovery systems, and alternative energy programs. R.C. 4928.02; R.C. 4928.64; R.C. 4928.65. It is also true that Dovetail received state tax incentives to build its biodigester facility that would turn solid waste into electricity and that it has been given certification as a renewable energy generating facility. Stipulation, ¶ 36-37. The production of energy is, by itself, a public concern.

{¶ 30} The trial court also found evidence in the record that there was a lack of competition in the marketplace. Bath Township disputes this assertion and cites to Dovetail's expert John Bentine's testimony to make its point. His testimony, however, refutes more than supports the township's argument. Bentine testified that while there are more small generators than in the past, there is still only one wholesale electric market, the PJM wholesale market. Trial Tr. at 80-81. When specifically asked whether there is any competition to the wholesale market, Bentine stated: "No. Fully one hundred percent through PJM." Trial Tr. at 91. So, even though customers do not get energy directly from Dovetail, they are exclusively served by the PJM marketplace to which Dovetail provides power.

{¶ 31} Dovetail is also heavily regulated by the government. Mike Oberfield, the CFO of Renergy (Dovetail's parent company), testified at the hearing that Dovetail is

regulated by the Public Utilities Commission of Ohio, the Federal Energy Regulation Commission, and the Ohio Environmental Protection Agency. Trial Tr. at 35-36; Stipulation, ¶ 38.

{¶ 32} Finally, Dovetail is taxed as a public utility. The parties stipulated that "[t]he State of Oho has determined the Dovetail facility is a public utility and its personal property has been taxed as a public utility since 2015." Stipulation, ¶ 40. It was further agreed that Dovetail "does not receive any exemption from public utility personal property taxes and has been paying them to Greene County, including Bath Township, since 2015. The State Tax Commissioner annually values Dovetail's public utility property which is assessed and collected by Greene County." Stipulation, ¶ 41.

{¶ 33} Based on our analysis of the "public service" and "public concern" factors, we conclude, as the trial court did, that Dovetail is a public utility for purposes of R.C. 519.211. The second assignment of error is overruled.

## IV. Proposed future development

{¶ 34} The third BZA appeal (and third assignment of error) dealt with Dovetail's proposed construction of 23-million-gallon fertilizer storage ponds on a nearby property. Bath Township argues that "public utility status is not automatically conferred on an entity-wide basis; instead, the classification of an entity depends specifically on the 'good or service' which is provided to the public." Appellants' Brief at 23. Its claim, then, is that the evidence presented shows no "substantive relation to the production, distribution, or dissemination" of electrical energy. *Id.* It is simply for storing excess fertilizer after being processed through the digester. *Id.* Bath Township further contends that the trial court failed to consider the issue in its judgment entry.

{¶ 35} Dovetail, on the other hand, insists that the storage facilities are part of the operation of its business under R.C. 519.211 and points to evidence in the record, including stipulations, that demonstrate that the biodigester cannot function (i.e., create electricity) without a place to store the excess fertilizer after it has been processed through the facility. It argues that "if Dovetail is a public utility, and if the temporary storage of fertilizer after feedstocks are converted to electricity is part of the operation," then Bath Township has no zoning authority over the proposed use of the land." Appellee's Brief at 25.

{¶ 36} While it is true that the trial court did not spend any time analyzing this particular BZA request other than to order the BZA to grant Dovetail's request for an exemption pursuant to R.C. 519.211(A), we cannot say that the trial court erred. There is no debate that storage facilities for fertilizer are a necessary part of the energy-producing process. Dovetail takes the solid waste, processes it through the digester, creates electricity from methane, and then holds the processed fertilizer until it is transported to farm fields. Stipulation, ¶ 15-20. Without a place to store the fertilizer, the facility cannot function. Based on the record before us, we cannot say that the trial court erred in ordering the BZA to grant Dovetail's request for a certificate of exemption. Future fertilizer storage facilities would be part of the public utility and exempt from Bath Township zoning. The third assignment of error is overruled.

## V.    Conclusion

{¶ 37} The judgments of the trial court will be affirmed.

. . . . . . . . . . . .

TUCKER, P. J. and DONOVAN, J., concur.


Copies sent to:

Catherine A. Cunningham
N. Trevor Alexander
Jack A. Van Kley
L. Michael Bly
Matthew S. Hauer
Hon. Michael A. Buckwalter